MILLER v. ERWIN *ET AL.*

(125 S. E., 36)

1. FRAUDULENT CONVEYANCES—EVIDENCE HELD TO SUSTAIN FINDING THAT FATHER'S DEEDS TO DAUGHTER WERE VOLUNTARY.—In action by father's creditor to set aside father's deeds to daughter, in which daughter claimed that father conveyed land to secure his *bona fide* debt to her, evidence *held* to sustain finding that conveyances were in fact voluntary.

2. FRAUDULENT CONVEYANCES.—FATHER'S VOLUNTARY CONVEYANCES TO DAUGHTER HELD FRAUDULENT AS TO FATHER'S CREDITOR.—Father's voluntary conveyances to daughter *held* void as to his creditor.

NOTE: On effect of preference of relative by transfer of property in satisfaction of debt, see note in 36 L. R. A. 341.

On effect of relationship to show participation by creditors in debtor's fraudulent intent, see notes in 31 L. R. A. 609; 32 L. R. A. 33.

On necessity of participation by the grantee or transferer in order to avoid a voluntary conveyance or transfer as against creditors, see note in 17 A. L. R. 728.

Before Johnson, J., Allendale, July, 1923.    Affirmed.

Action by S. L. Miller, Jr., against J. L. Erwin and Ruth Erwin.   Decree for plaintiff and defendants appeal.

The decree follows:

This was an action brought by S. L. Miller against J. L. Erwin and Ruth Erwin, his daughter for the purpose of setting aside a certain deed from J. L. Erwin to Ruth Erwin, dated March 3, 1915, and recorded in the Clerk's office for Barnwell County, March 4, 1916, in book of deeds 8Q, at page 325.   This action was brought to set aside this conveyance as fraud on the rights of all the creditors of J. L. Erwin.   The complaint sets up that on September 15, 1916, a judgment was obtained by J. B. S. Lyles, trustee, against J. L. Erwin, which judgment was filed and entered in the Clerk's office for Richland County, September 25, 1916, in the sum of $8,557.82, with interest from May 29, 1916.

The land conveyed by the deed above referred to is described as follows:    All that certain piece, parcel or lot of land, situate, lying and being in Allendale (formerly Barnwell) County, S. C., known as tract No. 4 of the Erwin estate, containing 190 acres, more or less, known as Church place, and bounded as follows:   North by Joseph Erwin, east by H. C. Flowers, south by J. D. Erwin, and wset by P. A. Erwin.    Also all that certain piece, parcel or lot of land, situate, lying and being in Allendale (formerly Barnwell) County, S. C., known as tract No. 5 of the Erwin estate, containing 162 acres, more or less, known as Polly Owens place, and bounded as follows:   North by lands of the estate of J. D. Erwin, east by H. C. Flowers, south by T. R. Erwin, and west by P. A. Erwin.

The answer of the defendant J. L. Erwin is as follows:

For a first defense:   Denies each and every allegation in said complaint contained.

For a second defense:    That on or about March, 3, 1915, this defendant *bona fide* and for a good and valuable consideration sold to his codefendant the premises described in

the complaint, and executed and delivered a deed whereby he conveyed the same to her in fee simple, and since that time he has not been in possession of said premises and has not received the rents, income, profits, benefits, and advantages arising or accruing therefrom.

For a third defense: That the proceedings referred to in the complaint, wherein J. B. S. Lyles as trustee was plaintiff, was for the foreclosure of a first mortgage over a valuable lot of land in the City of Columbia and of greater value than the indebtedness secured by said mortgage, and in which the plaintiff was directly interested; that during the pendency of said foreclosure proceeding, and before a sale of said premises was had, the plaintiff herein voluntarily agreed to satisfy and discharge the judgments recovered therein as soon as said proceedings was ended, and he succeeded in completing certain arrangements; that this defendant and his co-obligors did not bid on such property when it was offered for sale and the same was bid in for $500, and the plaintiff in this action thereby acquired a direct and substantial interest therein, and as this defendant is informed and believes the plaintiff herein has completed the arrangements referred to above, and by reason of all which this defendant alleges that he has been fully discharged and relieved of said judgment, and it should be satisfied and canceled of record.

The answer of Miss Ruth Erwin is as follows:

For a first defense: Denies each and every allegation in said complaint contained.

For a second defense: This defendant alleges that on or about March 3, 1915, she purchased from her codefendant the premises described in the complaint *bona fide,* and paid a good and valuable consideration therefor, and received a deed whereby said premises were conveyed to her in fee simple, that since said time she has been in possession of the same and has received the rents, income,

profits, benefits and advantages arising and accruing therefrom.

The case was duly referred to the Master for Barnwell County to take the testimony. Subsequently the complaint was amended by consent making S. L. Miller, Jr., a party plaintiff in place and stead of S. L. Miller. The amended complaint in substance sets out the same allegations as the original complaint. The amended answers of J. L. Erwin and Miss Ruth Erwin in substance sets out the same defenses.

Subsequent to the bringing of this complaint, Allendale County was formed, and the land described in the complaint is now situate in Allendale County, and subsequent thereto, under an order of the Court, the said case was transferred to Allendale County, in which county it is now pending. The order transmitting the testimony and signed by the Master for Barnwell County is a part of the record.

I have carefully considered all of the competent testimony in the case, and I find as a matter of fact that in 1915, and prior thereto, the defendant J. L. Erwin was heavily involved, numerous creditors were bringing suits and threatening suits in the foreclosure of mortgages caused by the defendant's speculations in real estate in the City of Columbia, and some creditors had obtained judgments. I find that the defendant J. L. Erwin was insolvent. The insolvency of J. L. Erwin is clearly established by the testimony in the case. I find that on March 4, 1916, for the first time the creditors had record notice of a conveyance from the insolvent J. L. Erwin to his daughter, Ruth Erwin. This deed was dated March 3, 1915, and the consideration expressed therein is the sum of $1,800. I find S. L. Miller, Jr., to be the owner and holder of the judgment above referred to.

In discussing fraudulent conveyances, the Court in the case of *Lenhardt v. Ponder,* 64 S. C., 364; 42 S. E., 172 holds as follows:

"The rule is thus stated in *Magovern v. Richard,* 27 S. C., 286; 3 S. E., 340: 'Was the mortgage void under the statute of fraud? To be void under said statute or at common law, it should be made to appear that it was either without consideration or that it was *mala fide,* one or both. In other words, for a paper of the kind to be invulnerable, it should be based upon a valuable consideration, and be a *bona fide* transaction: * * * What is a *mala fide?* It must an intent not simply to assert one's own rights, but, in addition thereto, to defeat the rights of another, participated in, as we have said, by both parties to the instrument.' The last-mentioned case [referring to the case of *Magovern v. Richard*] is cited with approval in the recent case of *McElwee v. Kennedy,* 56 S. C., 154; 34 S. E., 86, in which the Court also uses this language: 'To annul for fraud a deed based upon a valuable consideration, it must not only be shown that the grantor intended thereby to hinder, delay, or defraud creditors, but it must also appear that the grantee participated in such fraudulent purpose. Even if we were to assume that there is evidence of *mala fides* in the grantor, yet if the sole purpose of the grantee was to secure her claims, having no intent to hinder, delay, or defeat other creditors, her title cannot be affected by the *mala fides* of the grantor.' "

The Court, in the case of *Braffman v. Glover,* 35 S. C., 431; 14 S. E., 935, holds as follows:

"When a deed is made by a failing merchant to a kinsman within a few days after notification that creditors are about to sue, the grantee having been sent for at a distance of 30 miles, but his arival not awaited, and the alleged consideration being a prior advance by the grantee to grantor when she (the grantor) had purchased the land, and a verbal promise at that time to make such conveyance, if the grantor failed to make payment of balance due by her to her vendor (such balance not having yet matured), the *Court will require the fullest, clearest, and most satisfactory evidence of*

*good faith on the part of the parties, whenever the bona fides of the transaction is called in question."*

Again, in the same case the Court holds as follows:

"A deed made and received with the intent to defeat, delay, and hinder creditors of the grantor, is fraudulent and void as to creditors, even if based upon a valuable consideration."

In the case of *Jackson v. Lewis,* 34 S. C., 1; 12 S. E., 560, the Court holds as follows:

"A voluntary deed may be set aside at the instance of an existing creditor upon the ground of constructive or legal fraud, even where there is not the slightest taint of actual or moral fraud in the transaction, under the principle that the law requires that one must be just before he is generous. The law will not permit one who is indebted at the time to give his property away, provided such gift proves prejudicial to the interest of existing creditors. The motive which prompts the donor to make the gift is wholly immaterial. If the donor is indebted at the time, and the event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed for the purpose of paying such indebtedness, the voluntary conveyance will be set aside and the property subjected to the payment of such indebtedness; upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was free from any trace of moral fraud."

To the same effect as the above cases are the following cases: *Richardson v. Rhodus,* 14 Rich., 95. *Hudnal v. Wilder,* 4 McCord, 302. *Blake v. Jones,* Bailey Eq., 142; 21 Am. Dec., 530. *Eichelberger v. Kibbe,* 1 Hill Eq., 120; 26 Am. Dec., 192.

The intention to defraud may be shown by surrounding circumstances, and from the acts of the parties, and need not be proven as an independent fact. *Greig v. Rice,* 66 S.

C., 171; 44 S. E., 729.   *McGee v. Wells,* 52 S. C., 472; 30 S. E., 602.

Although the grantee in a deed had no actual knowledge of any fraud, and had no fraudulent intent, still if the gran-- tor was acting as agent of the grantee, the grantee would be charged with knowledge of the fraud. *Miller v. Wroton,* 82 S. C., 104; 63 S. E., 62, 449; 20 Cyc., 456; 12 R. C. L., 594.

In a case of this kind the burden is undoubtedly upon the defendant to explain away and rebut the badge of fraud the testimony shows, and this can be done only by the most positive and clear testimony. *Braffman v. Glover,* 35 S. C., 431; 14 S. E., 935.   *Morrisette v. Cook,* 122 Va., 588; 95 S. E., 451.

The defendant J. L. Erwin claims that, prior to the alleged execution of the deed, he secured the sum of $5,000 from one Hemphill, the executor of the estate of Ruth Erwin's grandfather, and that the consideration of $1,800 expressed in this deed was a part payment of this indebtedness. Erwin claims to have borrowed the sum of $5,000 from his daughter in January, 1911. During this year he took title to the lands in question in his own name. He did not make a conveyance to his daughter until 1915, over four years after he claimed to have bought the property for his daughter. Again, from the year 1911 to 1915 he was speculating and holding himself out to the world as being the owner of the land in question, and his creditors had a right to rely upon this fact. His daughter, Ruth Erwin, sets out in her answer that she loaned her father $5,000 but she did not appear to testify, and the mere fact that her answer sets up such a defense is not any evidence of its correctness. Erwin states that he gave a note to one Hemphill as the evidence of the indebtedness to his daughter, but he did not introduce in evidence the note, and the only reference to the note is contained in a letter from one Hemphill, which does not throw any light on the transaction. He in-

troduces in evidence also certain statements of his account, but these statements do not throw any light on the transaction. We have only the bare statement, therefore, of the defendant J. L. Erwin that he borrowed the sum of $5,000 from his daughter. If this had been true and he desired to prove it conclusively, he could have taken the testimony of his daughter, and could have submitted to this Court all the records in Georgia. This would have thrown sufficient light on the transaction to have assisted a Court of equity in reaching an equitable decision. If the sum of $5,000 had been borrowed, it was clearly incumbent upon both of the defendants to explain clearly and fully to the Court, under the authorities, the entire transaction, but they have failed to do so, even though the fullest opportunity was afforded. Having failed to explain the transaction under the rules laid down by the Court after a full opportunity to do so, and under the circumstances surrounding the transaction, I hold as a matter of fact that the conveyance in question was a voluntary conveyance.

Under the authorities above cited it is clear that under the statute a deed may be set aside on one of two grounds or both: First, if it is a voluntary conveyance; and secondly, if it is not a *bona fide* conveyance. I have held as a matter of fact that the conveyance in question was a voluntary conveyance, not supported by any consideration, and, therefore, a legal fraud. I further find as a matter of fact from the testimony that the defendant J. L. Erwin was agent and acting for his daughter, and even though she may not have known of the transaction, still on account of her relation to the defendant J. L. Erwin she was charged with his fraud.

It is therefore ordered, adjudged, and decreed:

(1) That the deed from J. L. Erwin to Ruth Erwin, conveying the property described, is fraudulent and void.

(2) That the said deed be set aside and canceled of record.

(3) That the plaintiff have judgment against the defendants for the costs of this action.

*Mr. Edward L. Craig,* for appellants, cites: *Pre-existing debt is a bona fide consideration:* 56 S. C., 169; 28 S. C., 442. *Burden of disproving instrument rests on the attacking party:* 55 S. C., 9; Dudley's Eq., 227. *Where assignment on its face shows valuable consideration burden of disproving it rests on the attaching party:* 165 N. Y. App. Div., 565; 31 Fed., 647; 27 N. E., 616; 82 S. E., 664; 23 C. J., 47; 2 N. & McC., 328. *Knowledge of an agent acquired while acting for himself or where his interest is antagonistic to his principal will not be imputed to his principal:* 105 S. C., 1; 50 S. C., 259; 31 Cyc., 1595; 27 C. J., 518; 62 N. H., 498; 165 Pac., 987; 14 L. R. A. (N. S.), 376; 38 L. R. A. (N. S.), 213; 118 S. W., 785. *Mala fides must exist both in minds of grantor and grantee to constitute conveyance as fraudulent:* 64 S. C., 364; 56 S. C., 154; 27 S. C., 286; 115 S. E., 633. *Apparent ownership of property by debtor does not prejudice creditor who does not change his position because of such possible appearance:* 105 N. W., 504; 56 S. C., 156.

*Messrs. T. H. Moffatt* and *Harley & Blatt,* for respondent, cite: *Fraudulent conveyance:* 64 S. C., 364; 35 S. C., 431; 34 S. C., 1; 14 Rich. L., 95; 4 McC., 312; Bailey Eq., 142; Hill Eq., 120. *Intent to defraud may be shown by surrounding circumstances and acts of the parties:* 66 S. C., 171; 52 S. C., 472. *Where grantor was acting as agent of grantee, grantee would be charged with knowledge of fraud by grantor:* 82 S. C., 104; 20 Cyc., 456; 12 R. C. L., 594. *Burden on defendant to rebut fraud:* 35 S. C., 541; 95 S. E., 451.

October 28, 1924.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

"S. L. Miller commenced an action in the Court of Common Pleas for Barnwell County on or about the 20th day of April, 1918, against J. L. Erwin and Ruth Erwin, by the service of a summons and complaint. The defendants filed separate answers. The case was referred to the Master of Barnwell County to take testimony only. The first reference was held November 17, 1919, and a continuance was granted on motion of plaintiff's attorneys to give an opportunity to apply for an order substituting S. L. Miller, Jr., as plaintiff. And thereafter an amended complaint was served to which the defendants filed separate answers. The Master held references from time to time, and the testimony of witnesses was taken. During the pendency of the action, Allendale County was created, and under the terms of the act creating that county the record was transferred to Allendale. The case was argued before Judge Johnson on the 19th day of July, 1923, and on the 16th day of August, 1923, a decree was filed deciding the case in favor of plaintiff."

The exceptions, four in number, challenge all of his Honor's findings, and contend that: (1) The deed was not a voluntary deed, but was founded upon a valuable *bona fide* consideration; that a pre-existing debt is a valuable consideration, and the burden of proof is upon the attacking party to prove that the terms of the written instrument are not as expressed by the instrument; that the evidence offered was sufficient to support defendant's contention. (2) That knowledge of the grantor acting as agent for the grantee under the circumstances of the transaction should not be imputed to the grantee. (3) The *mala fides* necessary to constitute a conveyance as fraudulent must be shown as existent to all of the parties of the transfer. (4) Apparent ownership of property by debtor is not a prejudice to a creditor who does not change his position because of his belief.

The complaint in this case does not ask to set aside the conveyances under the statute of this State to prevent an insolvent debtor from transferring his property with interest to prefer and favor a particular creditor or creditors, but is for the purpose of declaring the conveyances void for actual fraud, under the statute known as the Statute of Elizabeth. Under the Statute of Elizabeth both parties must participate in the fraud. The evidence in the case fails absolutely to connect the daughter, Ruth, with any fraud in the whole transaction. She was helpless in dealing with her father; he was her father, guardian, and agent. A daughter should not be charged with the fraud of her father; a transaction between a father and child does not of itself create a badge of fraud.

There is no doubt that the father owed his daughter, and in attempting to secure a *bona fide* debt he conveyed the property to her. There is not in the whole case any evidence to connect her with any participation of any fraud that her father committed (if any he did) to hinder, delay, defeat, and defraud his creditors. The evidence absolutely fails to connect the daughter, Ruth, as a participant of the fraud (if any) that her father committed. She was the daughter, he the father. He owed her. He attempted to protect her; that is, the whole of it as far as the testimony goes.

To stigmatize the daughter under the facts of the case, with actual fraud, would be cruel, and is not sustained by the evidence. If the father was her agent and acting for her, his conveyance to her for a *bona fide* debt that he owed her, without her knowledge, even though the father was guilty of fraud, his fraud could not be imputed to her. Her interests were antagonistic to his, and his knowledge could not be imputed to her. *Manship v. Newton,* 105 S. C., 1; 89 S. E., 467. The *mala fides* must exist in the minds of the grantor and grantee to constitute the conveyance as fraudulent. *Magovern v. Richard,* 27 S. C., 286; 3 S. E., 340. *McElwee v. Kennedy,* 56 S. C., 154; 34 S. E., 86.

*Lenhardt v. Ponder,* 64 S. C., 364; 42 S. E., 169. *Bell v. Thompson,* 122 S. C., 400; 115 S. E., 633. Nothing in the case shows any *mala fides* on the part of Ruth Erwin, the appellant.

The last group of exceptions are not considered, being unnecessary in our view of the case. Exceptions 12 and 3 should be sustained, the judgment should be reversed, and the complaint dismissed, but a majority of the Court decide otherwise, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Gary and Messrs. Justices Cothran and Marion concur in result.

Mr. Justice Fraser dissents.

Mr. Justice Cothran: The defendant does not claim to have borrowed the $5,000 directly from his daughter, but from the executor with the understanding that it was to be charged against her interest. Whether this was done in the settlement could have easily been shown, but was not. The defendant's showing I do not think was sufficient to overcome the finding of the Circuit Judge that the conveyance was voluntary.

Mr. Justice Marion: The opinion of Mr. Justice Watts assumes as a fact that J. L. Erwin owed his daughter $5,000, or an amount sufficient to cover the value of the real estate transferred. The Circuit Judge found to the contrary, that the conveyances were in fact voluntary. That finding of fact was fully warranted. If so, the Circuit Court's conclusions of law were sound. I think the decree of the Circuit Judge should be affirmed, for the reasons therein stated.

Mr. Justice Cothran concurs.