### McINNIS v. McRAE *ET AL.*

#### (132 S. E., 473)

1. Fraudulent Conveyances—Auction Sale of Land, Extensively Advertised and Fairly Conducted, With Consent of Mortgagee Holding Overdue Mortgage, Held Valid as Against Rirhts of Insolvent Mortgagor's Creditors.—Auction sale of land, extensively advertised and fairly conducted, with consent of mortgagee holding overdue mortgage, *held* valid as against rights of insolvent mortgagor's creditors.

2. Fraudulent Conveyances—Transfer of Bid by Purchaser at Auction Sale of Land to Insolvent Owner's Wife, in Consideration of Her Executing Mortgage for Amount of Mortgage Then on Land, Together With Debt Due Purchaser, and Deed from Owner to Wife in Pursuance Thereto, Held Valid as Against Owner's Creditors.—Transfer of bid by purchaser of land at auction sale to insolvent owner's wife, in consideration of her executing mortgage for amount of .mortgage then on land and debt due purchaser, *held* valid as against claims of creditors of owner, as was deed in pursuance thereto from owner to wife.

3. Fraudulent Conveyances—Assignment by Insolvent Owner to Wife, of Difference in Sum for Which Land Sold and Mortgage Thereon, on Her Executing Mortgage to Purchaser for Amount of Mortgage and Purchaser's Claim Against Owner, Cannot be Sustained and Other Creditors May Follow Such Difference and Share Pro Rata Therein (Assignment Law [Civ. Code 1922, § 5512]).—Where insolvent owner, after sale of land at auction, transferred his interest in excess bid over amount of mortgage to wife, by making deed .to her on her executing mortgage to purchaser for amount of mortgage and purchaser's claim against husband, such assignment of difference cannot be sustained under the Assignment Law, and other creditors may follow the difference between the mortgage and the sum bid, and are entitled to pro rata share therein.

Before Memminger, J., Marlboro, May, 1924. Decree modified.

Action by John McInnis against A. C. McRae and others. Judgment for plaintiff, and defendants appeal.

The Report of H. J. Riley Referee, and decree of the Circuit Court are as follows:

## "REPORT OF REFEREE

"This case was referred to me for the purpose of taking testimony and reporting my findings upon the issues of law and fact. Messrs. Tison & Miller, attorneys for the plaintiff, and J. W. Le Grand, attorney for all of the defendants, were present at all of the references held by me, and the testimony was, by agreement of counsel, taken stenographically by Miss Sarah Buzhardt and transcribed, and copies furnished to the counsel for each side, and the original filed with me and will be filed along with the report, to which reference is directed.

"While in the beginning of this report I have referred to this as a case, when, as a fact it is more in the nature of a supplementary proceedings, and has been so treated by all parties, wherein the plaintiff by his complaint or petition is seeking to discover assets belonging to A. C. McRae, or rather to set aside a deed executed by A. C. McRae to Alice McL. McRae, who is his wife, and a mortgage executed by Alice McL. McRae to H. W. McLaurin covering the lands described in the complaint in this proceeding. At the first reference held, it appeared from the testimony of H. W. Mc-Laurin that, while the mortgage and notes secured thereby were executed to him, the same really belonged to the Scotland Supply Company, a corporation of which he is president, and that he had transferred said papers to the corporation. Thereafter, at another reference held, the Scotland Supply Company, on motion of S. S. Tison, Esq., attorney for plaintiff, was made a party defendant, and the Scotland Supply Company, the new defendant, was permitted to set up its mortgage debt and to ask for foreclosure, although no formal amended complaint was served or filed, and no formal answer was served or filed.

"I think that the interest of all parties can be properly cared for without requiring such papers to be filed or served, since the plaintiff was ably represented at every reference, and the defendants and their attorney were present and had

notice of the entire proceeding. By reference to the testimony, it will be disclosed:

"That A. C. McRae, being the owner of the land described in the complaint (which seems by actual survey to have contained about 62 acres), on the 10th day of February, 1920, obtained a loan of $5,000.00 from Southern Life & Trust Company, a corporation of Greensboro, N. C., and secured the loan by the execution of five notes, each for the principal sum of $1,000.00, and a mortgage on the lands described in the complaint. That the defendant, A. C. McRae, had not paid any part of the principal, and became in arrears with the interest, thus causing the whole debt to become due and on August 24, 1922, a *lis pendens* was filed in the case of Southern Life & Trust Company, a corporation plaintiff, against A. C. McRae, defendant, covering the land mortgaged, in the office of the Clerk of Court for Marlboro County. That on the 26th day of August, 1922, the Sheriff of the County served on A. C. McRae the summons and complaint with copies of the notes attached, in the case of Southern Life & Trust Company, a corporation, plaintiff, against A. C. McRae, defendant, said action being for the foreclosure of the mortgage covering the premises described in the complaint in this proceeding. That some time after the papers were served, but before judgment in foreclosure was taken, the defendant, A. C. McRae, made an effort to sell the lands at private sale, and failed to obtain a satisfactory offer. He then procured Col. Tom C. Hamer, of the firm of Hamer, Hamer & Darby, to sell the lands at public auction on the 9th day of November, 1922, and advertised the sale properly and fully, by having printed and distributed throughout the county a number of hand bills, and also advertised in the *Pee Dee Advocate* in a very prominent way, thus bringing to the attention of all who might desire to purchase said lands the notice of intention to sell, and the time and place of such sale. That at said sale all those who could be considered prospective buyers were present, in-

cluding the plaintiff and the defendant, H. W. McLaurin, and several other prominent gentlemen. That the sale was fair and open, and without any chilling of bids, or attempt to chill bids, and that all who desired to bid had full opportunity to do so, and that H. W. McLaurin, representing the Scotland Supply Company, became the last and highest bidder, and was declared to be the purchaser of said lands. It was announced at the sale that the Southern Life & Trust Company held a mortgage, and that same was to be satisfied out of the purchase price.

"After the sale the defendant, Alice McL. McRae, took title to the land and executed her promissory note to the defendant, H. W. McLaurin, for the principal sum of $8,296.24, bearing date November 10, 1922, and becoming due by its terms November 10, 1923, and bearing interest at the rate of 6 per cent. per annum, and providing for attorney's fees. At the same time she executed a mortgage covering the land purchased and described in the complaint in this proceeding, securing the payment of said note. I find from the testimony that Alice McL. McRae paid the full value for the lands conveyed to her, and that such consideration is made up as follows: The assumption by her of the debt due by A. C. McRae to the Scotland Supply Company, about which there is no question, and the amount of which was on that date $2,662.61, and the assumption by her of the mortgage debt due by A. C. McRae to Southern Life & Trust Company, which mortgage debt was being foreclosed at the time of the sale and the existence of which made the sale necessary, and which amounted to over $5,000.00 on the date of the sale, and the assumption by her of certain small judgments against A. C. McRae, which account of Scotland Supply Company, mortgage to Southern Life & Trust Company, and judgments against A. C. McRae at that time exceeded $8,296.24 on November 10, 1922. That the Scotland Supply Company paid the mortgage debt to the Southern Life & Trust Company and the judgments then

existing against A. C. McRae, which had been assumed by Alice McL. McRae, and she contemporaneously with the receiving title to the land executed her note and mortgage as above stated for $8,296.24, which was given to secure the note mentioned and the account of A. C. McRae to Scotland Supply Company of $2,662.61, which she had assumed the payment of. While the note and mortgage was actually executed in the name of H. W. McLaurin, the same really belonged to the Scotland Supply Company, and was properly transferred to same by H. W. McLaurin.

"I, therefore, find that the sale of the lands on the 9th day of November, 1922, which is sought to be set aside, was fair and open and without any evidence of fraud or collusion on the part of any one, and that full and complete notice was given of such sale, and that the plaintiff and all parties interested had full opportunity to purchase, and that the lands were sold for full value to H. W. McLaurin, who (it is made clear in this case from his testimony) was acting for the Scotland Supply Company, who became the highest bidder for the lands, that, after the lands were bid off, H. W. McLaurin, acting for the Scotland Supply Company, allowed Alice McL. McRae to take the lands at his bid, upon her contemporaneously with the receiving title executing her note and mortgage for $8,296.24 to secure the indebtedness above mentioned of A. C. McRae to Scotland Supply Company, and the mortgage debt of A. C. McRae to Southern Life & Trust Company, which was paid on the date of the execution of the deed by the Scotland Supply Company and certain judgments against A. C. McRae, all of which amounted to something more than the principal sum named in her note and mortgage to H. W. McLaurin. There was some testimony that the property would be now worth more than the sum for which it was sold to Alice McL. McRae, but the testimony overwhelmingly points to the fact that the land was sold for its full value on the date of the sale, and that the defendant, A. C. McRae, was without

power to prevent a sale under foreclosure, and that the lands brought as much or more than they would have brought had they been sold under the judgment of foreclosure in the action then pending. I do not find anything in the testimony which even indicates to my mind that there was any collusion or agreement between any of the parties to the sale, or any effort or intention of effort to defeat the rights of the plaintiff or any other person who might have had any claim against A. C. McRae. H. W. McLaurin was acting for the Scotland Supply Company, and did what any other prudent creditor of A. C. McRae had the right to do in bidding on the land, and, when same was sold to him in permitting his bid to go to another, upon such purchaser securing to him his claim.

"Now, as to the rights of the plaintiff: An effort was made to prove that a short time before the sale A. C. McRae executed an open note to the plaintiff, which was the renewal of another note which by its terms did not become due until after the date of the sale, and that the purpose of this was to prevent the plaintiff from collecting his debt. I do not think, however, that this effort was sustained by any of the testimony. At the reference held before me on the 20th day of February, 1924, the plaintiff testified, and on the second page of his testimony he stated, that the debt, for which the note in question was executed, grew out of an account due by A. C. McRae to Covington & Company, made in 1911; that about 1914 or '15 McRae borrowed $3,200.00 from a bank in Clio, of which J. C. Covington, of Covington & Company, was president and the plaintiff was a stockholder, upon an agreement that he was to pay the debt out of the money borrowed; that he paid a part of the debt and executed a note for the balance. Now, if the plaintiff was correct in his testimony, this note was executed as far back as 1915, and had, therefore, been running for more than six years without any payment thereon prior to the date of the execution of the renewal note. It was an

12—S. C. R.—134.

open note, and was, therefore, out of date at the time A. C. McRae executed the renewal note. Both the plaintiff and the defendant A. C. McRae testified that a short time prior to the sale of the lands, McRae went into the place of business of the plaintiff after having been requested to do so by the plaintiff and executed the renewal note, making same fall due some 30 days or more thereafter; that the note was not due at the time the land was sold; that no question was made by plaintiff as to the sale. I find from the testimony that the execution of this renewal note really showed an effort to benefit plaintiff rather than to take advantage of him, since McRae executed a renewal note for an old note then out of date. I find that some time after the sale of the lands, and when the renewal note became due, the plaintiff obtained judgment on the same, and execution was returned *nulla bona,* and then started this proceeding. It is clear to my mind from the testimony that all of the defendants acted in absolute good faith in the sale of the lands, and that the land was sold after due notice given, and was fair and open to all parties, and was based upon valuable consideration which was full and complete, and that same should not be disturbed, that no advantage was taken of the plaintiff, and that he lost no rights whatever on account of anything done by any of the defendants. I also find that, in order to avoid a multiplicity of suits, the Scotland Supply Company, which is the owner of the note and mortgage executed by Alice McL. McRae to H. W. McLaurin, being made a party to this action, should be given a judgment of foreclosure herein, and I, therefore, recommend that such judgment be given.

### "Decree of Circuit Court

"This matter comes before me on exceptions to the Referee's report. The action was originally brought to set aside a deed from A. C. McRae to his wife, Alice McLaurin McRae, and a mortgage from Alice McLaurin McRae to

her brother, H. W. McLaurin, which mortgage was afterwards assigned by him to the Scotland Supply Company, of which he was president. This assignment not being known to the plaintiff until developed by proof on the trial of the cause, the Scotland Supply Company was made, by amendment, a party defendant.

"After reading the report of the Special Referee and the testimony, hearing arguments by attorneys for both sides, and after a careful consideration of the cause, I am satisfied that there was collusion between the parties, and that the transactions in fact amount to an assignment. I find that all facts necessary to prove an unlawful preference under the Assignment Law are abundantly shown by the testimony. Accordingly, I think the exceptions well taken, and the same are sustained, and the report of the Special Referee reversed.

"Let the deed from A. C. McRae to his wife, Alice McLaurin McRae, recorded in Book 33, p. 351, and the mortgage from Alice McLaurin McRae to her brother, H. W. McLaurin, recorded in Book 29, p. 121, be set aside and cancelled by the Clerk of this Court, and the tract of land vested as formerly with the legal title in A. C. McRae, but subject to an equitable mortgage on the premises in favor of Scotland Supply Company, for the amount actually paid to the Southern Life & Trust Company in settlement of its mortgage.

"The following is a description of the property affected by this decree: 'All that certain piece, parcel or tract of land, lying and being situate in the County of Marlboro, in the State of South Carolina, containing about sixty-five acres, bounded by lands of S. P. Wright, Mrs. Don McQueen and others, beginning at the center of the run of. Big Reedy Creek at a stake 3XN, and running thence with the line of Mrs. Don McQueen S. 12 W. 25.00 to a corner marked by stake 3XN; thence N. 78 W. 34.10 to a stake 3XN; thence N. 50 E. 37.20 to a corner at the center of the

run of Big Reedy Creek marked by stake 3XO; thence along
.the center of the run of Big Reedy Creek back to the be-
ginning corner, being the same tract of land devised to me
by my father, James C. McRae, by his last will and testa-
ment which bears date the 14th day of September, 1908, and
is part of the same tract of land conveyed to my father, the
said James C. McRae, by Roderick A. McRae, by deed bear-
ing date September 17, 1868, and recorded in Book B, page
402, on February 5, 1869, in the office of the Clerk of Court
for Marlboro County.' "

*Mr. J. W. Le Grand,* for appellants, cites: *Where Ref-
eree and Circuit Judge differ as to findings of facts, the*
*facts are open questions on appeal:* 26 S. C., 446. *Allega-
tions necessary to sustain an action under the Assignment
Act:* 46 S. C., 157; 39 S. C., 150; 38 S. C., 463; 33 S. C.,
530; 25 S. C., 250. *Creditor may be preferred by bona
fide mortgage intended merely as security:* 26 S. C., 446.
*Assignment statute should be literally construed:* 22 S. C.,
108. *Mortgage given by insolvent debtor, not intended as
security only, voidable:* 29 S. C., 491. *Release of bona
fide debt is valuable consideration:* 56 S. C., 154. *When
preference may be given certain creditors:* 56 S. C., 169;
27 S. C., 272; 21 S. C., 261. *To annul deed for value
on ground of fraud grantee must be guilty of fraud:* 56
S. C., 170. *Payment of bona fide debt by insolvent debtor
not prohibited:* 56 S. C., 171.

*Messrs. Tison & Miller,* for respondent, cite: *What
preferences prohibited:* 44 S. C., 189; 32 S. C., 496; 22
S. C., 180; 119 S. E., 582; 129 U. S., 330. *Equity con-
siders substance, not form:* 23 S. C., 405.

March 1, 1926.

The opinion of the Court was delivered by Mr. Justice
Cothran.

I do not agree with the conclusion arrived at by Mr. Jus-
tice Watts, affirming the decree of Judge Memminger in

this case, and am of opinion that it should be materially modified in conformity with the conclusions herein announced.

The plaintiff, a creditor of A. C. McRae, brought this action to set aside, as fraudulent and in violation of the Assignment Law (Civ. Code, 1922, § 5512), a deed from A. C. McRae to his wife, Alice M. McRae, and a mortgage from Alice M. McRae to her brother H. W. McLaurin (subsequently assigned to Scotland Supply Company); both deed and mortgage covering the same tract of land, 62½ acres, in Marlboro County.

The case was referred to a Special Referee, H. J. Riley, Esq., to hear and determine all the issues of law and fact. He filed a report sustaining the validity of both the deed and the mortgage. The plaintiff excepted thereto, and, the matter having been heard by his Honor, Judge Memminger, he filed a decree reversing the conclusions of the Referee and holding:

"That there was collusion between the parties, and that the transactions in fact amount to an assignment. I find all facts necessary to prove an unlawful preference under the Assignment Law are abundantly shown by the testimony."

He decreed that the deed and mortgage be set aside and cancelled by the Clerk of Court, and that the title to the land be vested in A. C. McRae—

"subject to an equitable mortgage on the premises in favor of the Scotland Supply Company for the amount actually paid to Southern Life & Trust Company in settlement of its mortgage."

From this decree the defendants have appealed; they being A. C. McRae, Alice M. McRae, H. W. McLaurin, and Scotland Supply Company. The appeal was heard at the February, 1925, session of this Court; the Court at that time being composed of Justice Watts, Justice Fraser, Justice Marion, and Acting Associate Justice W. C. Cothran,

the Chief Justice and Justice Cothran being absent on account of illness.

Before an opinion could be filed after this hearing, Justice Fraser died on May 21, 1925, and, there being a difference of opinion among the other justices who heard the case, it was set down for reargument at the June session, at which time the Court was composed of the Chief Justice, Justice Watts, Justice Cothran, Justice Marion and Acting Associate Justice R. O. Purdy.

On August 17, 1925, Acting Associate Justice Purdy filed an opinion, adopting the one which had theretofore been prepared by Acting Associate Justice W. C. Cothran, but which had not been filed, reversing the decree of Judge Memminger and sustaining the report of the Referee; the Chief Justice and Justices Marion and Cothran concurring; Justice Watts dissenting.

Thereafter the plaintiff filed a petition for a rehearing which was granted, and the case was set down for reargument upon the printed record as before, without oral argument.

An opinion is now submitted by Justice Watts, affirming the decree of Judge Memminger, with which I do not agree, for the reasons which follow.

The facts are as follows:

In 1920 A. C. McRae borrowed $5,000 from the Southern Life & Trust Company (hereafter referred to as the trust company), and executed a note and mortgage upon the premises therefor. McRae being in default, the trust company commenced foreclosure proceedings in August, 1922. McRae was anxious to avoid the expense of a foreclosure sale, and to realize as much as possible from the sale of his property. He accordingly entered into an agreement with the trust company, through its attorney, J. W. Le Grand, Esq., by which the foreclosure proceedings were suspended, and he was allowed to put on an auction sale of the property

for cash; the argreement being that the proceeds of the sale should be applied to the mortgage held by the trust company auctioneers, to conduct the sale. The land was subdivided into three tracts and the auction extensively advertised in the county paper and by handbills distributed generally through the country. The sale was had as advertised on November 9, 1922. The subdivisions were put up separately, and the entire tract was offered. The bid for the latter proving more satisfactory, the entire tract was knocked down to H. W. McLaurin at $7,600.18. It is conceded on all sides that McLaurin was representing and acting for the Scotland Supply Company, of which he was president (hereafter referred to as the supply company). This company had an unsecured account against McRae for $2,662.61.

After the sale, and before complying with his bid, McLaurin transferred his bid to the defendant Alice M. McRae. his sister, and the wife of A. C. McRae, upon condition that she execute a note and mortgage to him for $8,-296.24, made up of the amount due upon the trust company mortgage, $5,633.63, which he undertook to pay, and the account due by McRae to the supply company, $2,662.61. This arrangement was manifestly made with the knowledge and acquiescence of A. C. McRae, who thereby surrendered the difference between the amount of the bid, $7,600.18, and the amount due on the trust company mortgage, $5,633.63 —$1,966.55. Accordingly, A. C. McRae conveyed the property by deed to Alice M. McRae, and she executed a note and mortgage to McLaurin as agreed.

The note and mortgage were then assigned by McLaurin to the supply company, which paid to the trust company the amount due on the mortgage held by it, $5,633.63. The supply company holds the mortgage for $8,296.24 as security for the amount paid by it to the trust company and the amount of its account against McRae, both of which,

by the arrangement, have become the debts of Alice M. Mc-Rae. In addition thereto the supply company has paid off several judgments which had been entered against McRae, amounting to between $500 and $800; the judgments not appearing to have been listed in the record for appeal.

The plaintiff attacks the entire series of transactions, the auction sale, the transfer of McLaurin's bid, the deed from McRae to his wife, and the mortgage from her to McLaurin, as parts of an original conception to transfer all of the property of McRae, in violation of the statute of Elizabeth and of the Assignment Law of the State. It is conceded that at the time A. C. McRae was insolvent, and that he had left no other property which could have been made available to his creditors.

The plaintiff's claim against McRae arose in this way: In 1911 McRae owed a store account to Covington & Co. of considerable size. He borrowed from the bank of which Covington was president $3,000, and applied a part of it to the account, giving Covington & Co. a note for the balance, about $600. This occurred not later than 1915. Later the business of Covington & Co. was closed out, and this note which McRae had given was assigned to the plaintiff in the settlement. No payments were made upon this note, and on October 3, 1922, McRae gave to the plaintiff a new note, called a renewal note, for $1,027.54. The original note was then more than 7 years old, and was out of date. The new note was payable November 24, 1922. The sale took place on November 9, 1922, and at that time the plaintiff's note of $1,027.54 had not matured.

There is no contention that the sale was not fairly conducted or that the property did not bring a fair price. The sale had been thoroughly advertised; it was conducted by an auctioneer personally known to the Court of the highest character; a large number of people, *including the plaintiff* attended; there appears not a circumstance reflecting upon the integrity of the transaction.

Certainly the defendant McRae had the right, with the consent of his pressing mortgagee, to have the sale as it was conducted, rather than under the auctioneer's hammer at a forced judicial sale. The mortgagee consented; the mortgagor desired it; who else had the right to object? The only person who was adversely interested was the plaintiff, and he, though present, made no objection. He had the right to adopt the tactics adopted by McLaurin, but chose not to take the risk.

If the sale was legal, McLaurin was entitled to the land upon complying with his bid, and he had the right to transfer his bid to Mrs. McRae or any one else; under its terms, McRae was entitled to the difference between McLaurin's bid, $7,600.18, and the amount due upon the trust company's mortgage of $5,633.63—$1,966.55.

In the transaction between McRae, Mrs. McRae, and McLaurin, by which McLaurin's bid was transferred to Mrs. McRae upon condition that she would give her note and mortgage to McLaurin for $8,296.24 (the trust company's mortgage of $5,633.63 and the Scotland Supply Company account of $2,662.61), she could not have complied with her part of that agreement unless McRae surrendered to her his right to the difference between the bid, $7,600.18, and the trust company's mortgage, $5,633.63—$1,966.55. That this surrender was for the benefit of the Scotland Supply Company is obvious, and that it was consummated is equally so. *It seems clear, therefore, that the contest is limited to the validity of this surrender by McRae.* The sale cannot be impeached; the transfer of McLaurin's bid to Mrs. McRae is equally valid, and so is the deed from McRae to Mrs. McRae. The question is therefore whether or not the surrender or assignment of this difference by McRae to Mrs. McRae for the benefit of Scotland Supply Company can be sustained under the Assignment Law.

I do not think that it can be; he was at the time admittedly insolvent and his interest in the land, subject to the trust company's mortgage and the outstanding judgments, was all the property he possessed. The surrender or assignment of his interest in the proceeds of the sale to his wife, as stated, was manifestly in the interest of the Scotland Supply Company, which was made the preferred creditor.

The Scotland Supply Company, subsequently to the transaction under review, paid off judgments then open against McRae, amounting to an unascertained sum estimated at from $500 to $800. That company should be protected so far as those payments are concerned.

, The sale, the transfer of the bid, and the deed being valid, the plaintiff has no lien upon the property by virtue of his judgment, but has only an equity to follow the difference referred to.

I think that, as to the mortgage of $8,296.24, given to McLaurin by Mrs. McRae, the supply company should be held as a trustee, with the right to foreclose the same, and that the net proceeds of the sale should be applied as follows:

(1) To the payment to the supply company of the amount paid by it to the trust company upon its mortgage, $5,633.63, with interest at 7 per cent from November 10, 1922.

(2) That from $1,966.55 of what may remain after said application, with interest at 7 per cent from November 9, 1922 (which represents the interest of A. C. McRae in the proceeds of the auction sale, improperly surrendered or assigned to Mrs. McRae for the benefit of the supply company), there be paid to the supply company the amount paid by it in satisfaction of the judgments existing against A. C. McRae at the time of the auction sale, with interest from the several dates of payment at 7 per cent, and that the remainder thereof be apportioned between the plaintiff and the supply company according to the amounts due to

them respectively by A. C. McRae, namely, to the plaintiff the amount of his judgment with interest at 7 per cent from February 10, 1923, and to the supply company the amount of its account, $2,662.61, with interest at 7 per cent from November 10, 1922, when it became an account stated, admitted by A. C. McRae.

(3) That the remainder, if any, be applied to the mortgage held by the supply company.

(4) That any surplus remaining be paid to the defendant Alice M. McRae.

(5) That each party pay his own costs.

Without prejudice to the defendant McRae's *claim* of homestead exemption so far as he may be entitled thereto.

This, being the opinion of a majority of the Court, is made the judgment of the Court.

Judgment modified.

Mr. Justice Marion and Mr. Acting Associate Justice R. O. Purdy concur.

Mr. Chief Justice Gary did not participate.

Mr. Justice Watts (dissenting): A former opinion in this case having been filed, a motion for a rehearing was made and granted, upon the ground that the decision had been made upon a misapprehension as to the existence of a very material fact. I dissented from the opinion which was filed.

The respondent takes the position that no actual fraud was shown, and that the allegations of the complaint do not bring the case within the terms of the Assignment Act. While the complaint seems to be framed primarily under the statute of Elizabeth, the prayer for relief indicates that the pleader intended to make apt allegations to bring the case under the statute of Elizabeth and under the Assignment Act (Civ. Code 1922, § 5512).

While the prayer for relief forms no part of the complaint, and cannot supply allegations which do not appear in the complaint, I am of the opinion that the complaint is

sufficiently definite to bring the case under the Assignment Act, and I adhere to the opinion before formed by me, viz. : That the decree of his Honor, the Circuit Judge, should be affirmed.

A foreclosure of the mortgage against the defendant McRae had been commenced. It was all the property that he had. The testimony shows that he was wholly unable to pay the note made to the plaintiff, and also shows that the contemplated sale was to be for the sole protection of the Scotland Supply Company, and it was not contemplated to pay the plaintiff.

While the transactions appear to have been handled by McRae and the representative of the Scotland Supply Company, the intent of McRae is imputed to his wife, for she, as a matter of law, had notice. *Miller v. Erwin,* 125 S. E., 36; 129 S. C., 415. The sale was no more than a sale of the husband to the wife, without consideration on her part, and for the purpose of securing Scotland Supply Company to the exclusion of the other creditors, after paying the mortgage which was in process of foreclosure.

Inasmuch as the report of the Referee and the decree of the Circuit Court contained full statements of the case, I have not undertaken to make any further statement. Let the report of the Referee and the decree of the Circuit Court be reported.

The decree of the Circuit Court should be affirmed, and the case remanded to that Court for such further steps as may be necessary to carry it into effect with leave to the debtor to apply for a homestead as against the claim of the plaintiff.