STATE v. RALPH HENDERSON.

(Filed 11 July, 1934.)

**1. Criminal Law I g—Refusal to submit material part of requested instructions on phase of case supported by evidence held error.**

In this prosecution for seduction defendant contended, supported by evidence, that prosecutrix knew he was married and that he had not obtained a divorce, and that she knew he could not marry her until he had obtained a divorce. Defendant requested an instruction that the burden was on the State to prove beyond a reasonable doubt that the promise of marriage was absolute and not conditional upon defendant's

securing a divorce or any other condition. The trial court instructed the jury that the promise of marriage would have to be absolute and unconditional, and that a promise of marriage "if anything happened" was a conditional promise and would not support an indictment. *Held,* defendant was entitled to have the particular aspect of the case presented by the evidence submitted to the jury in every material part upon his request, and the charge as given failed to do so, and the refusal of the requested instructions entitles defendant to a new trial.

**2. Same: Trial E e—Duty of trial court to submit requested instructions.**

While the trial court is not required to give in exact language a requested instruction, he is required to give in substance every material part of a requested instruction upon a material aspect of the case which is supported by the evidence and relied upon at the trial.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Cranmer, J.,* at October Term, 1933, of PENDER.

The defendant was indicted for the seduction of Rodella Pierce. Upon conviction he was sentenced to prison for a term of four years. The evidence for the State tended to show that the prosecuting witness met the defendant a short time prior to April, 1932, and that the first carnal act occurred at her home in April, 1932. The witness said: "At the time he asked me to marry him, he asked me if I loved him good enough to drop the world behind me and go with him; forsake all others for him. . . . This conversation took place before I yielded to him. My baby was born dead, in July, 1933, and I discovered this condition in December, 1932, and told the defendant about it. . . . I had heard that he was a married man, but he told me his wife was dead. He told me he was just as free to go with me as anybody in the world. . . . I told him I was afraid. I had heard—I didn't exactly use those words, but it had the meaning, that I had heard he was married, and he said, 'I am just as free to go with you as anybody in this world is.' Right after I met him he told me that her mother had been notified that she was dead, that she died in Maryland, . . . and he told me he reckoned she was dead. . . . I said at the magistrate's court that I had heard that he was married, and that he had heard his wife was dead, but before then he had sued for a divorce and had it all paid for lacking a few dollars. He told me he had brought suit in Rosemary, and that he would have it as quick as he could finish paying for it, and could get the papers any time he wanted them. Certainly I know a man with a living wife could not get married unless he had a divorce. He told me he could get married at any time. He said there wasn't anything in the world to do only for the clerk of the court to sign the divorce papers. . . . He just told me he lacked a little of having his divorce and told me he was really intending to marry

me—that we would be married. . . . He said he could get his divorce any time he went after it. I knew he didn't have the papers. . . . He told me all he lacked was getting the clerk of the court to sign it. . . . I don't reckon it was complete without that. . . . I knew he didn't have the papers, but I thought his divorce was complete except that. I knew he couldn't marry until he got his papers. . . . I asked him did he think he had any right to go with me and he said he had just as much right and was just as free to go with me as anybody in the world was, and sometime after that he told me he had put in for a divorce and after he put in for a divorce that her mother had been notified that she died in Maryland and after she was notified she told him of it, but he had never looked it up nor seen whether she was dead or not; that he was going to finish paying for his divorce and we were going to be married. . . . I knew he had to get the papers before he would have his divorce." The prosecuting witness further testified that she had heard that the defendant had married again in June, 1933.

Four or five witnesses testified that the prosecuting witness was a girl of good character, and four or five witnesses testified that she was a girl of bad character. The constable, deputy sheriff, and three or four other witnesses testified that at the preliminary hearing the prosecuting witness had testified that defendant told her he was a married man, but that he "had put in for a divorce and had to go to Rosemary to finish paying for it."

From the judgment pronounced the defendant appealed.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Bruton for the State.*
*Robert Grady Johnson and Rivers D. Johnson for defendant.*

BROGDEN, J. The defendant, in writing and in apt time, requested the following instruction, to wit: "The court instructs the jury that to convict the defendant it is encumbent upon the State to satisfy the jury beyond a reasonable doubt that the promise to marry was absolute and not conditional upon his securing a divorce or any other condition." The trial judge in his general charge to the jury said: "Now, as to the promise of marriage, that is the second element. First, I instruct you that the promise must be unconditional; that is, there must be no condition attached to the promise. Now, to illustrate what I mean, if a woman yields herself to a man and testifies that he promised to marry her if anything happened, that would not be an unconditional promise. It would not be sufficient promise to support a bill of indictment."

The instruction given the jury by the trial judge was correct in itself and supported by many decisions. However, the defendant insists

that the case was tried upon the sole theory that the promise of marriage was conditioned upon securing a divorce, and that the prosecuting witness knew that there was no final judgment of divorce, and further knew that such judgment was necessary before a valid marriage could be consummated. Therefore, the defendant asserts that the special instruction tendered by his counsel, emphasizing the particular part that the divorce proceeding played in the case, was vital to his defense. The general instructions given the jury inadvertently overlooked this particular phase of the evidence.

The general rule of law pronounced in many cases in this jurisdiction is to the effect that the parties cannot require a trial judge to parrot prayers for instruction or to become a mere judicial phonograph for recording the exact and identical words of counsel. Nevertheless, "it is an equally well established rule that if a request is made for a specific instruction, which is correct in itself and supported by evidence, the court, while not required to adopt the precise language of the prayer, must give the instruction, at least in substance, and a mere general and abstract charge as to the law of the case will not be considered a sufficient compliance with this rule of law. . . . It would seem to follow from this rule, and to be inconsistent with it if we should not so hold, that if a special instruction is asked as to a particular aspect of the case presented by the evidence, it should be given by the court with substantial conformity to the prayer." *Baker v. R. R.,* 144 N. C., 36, 56 S. E., 553. See, also, *Savage v. Davis,* 131 N. C., 159, 42 S. E., 571; *Horne v. Power Co.,* 141 N. C., 50, 53 S. E., 658; *Parks v. Trust Co.,* 195 N. C., 453, 132 S. E., 473; *S. v. Lee,* 196 N. C., 714, 146 S. E., 858.

This Court has consistently held the view that if a party desires some special phase of a case that is material, supported by evidence and relied upon at the trial, submitted to the jury, he must, in apt time, present a proper special instruction. If he fails to do so, he cannot complain if such phase is not adverted to in the charge, which is otherwise correct. Consequently, if he presents such proper special instruction upon such particular phase, he has a right to insist that the trial judge shall submit every material part of it as written.

In the case at bar the defendant built his defense upon the theory that he was a married man, not divorced, and that the prosecuting witness knew it. Manifestly, the contention, presented by the special instruction that the promise of marriage was conditioned upon the divorce decree, was material and vital upon that particular phase of the case. Therefore, the Court is of the opinion that the defendant is entitled to a

New trial.

SCHENCK, J., took no part in the consideration or decision of this case.