STATE OF NORTH CAROLINA v. CURTIS HERRING

No. 572A87

(Filed 28 July 1988)

**1. Rape and Allied Offenses § 5— rape—serious personal injury—evidence sufficient**

There was sufficient evidence to establish the serious personal injury element of first degree rape and first degree sexual offense where the State's evidence tended to show that defendant choked the victim into unconsciousness three times; her jeans were tied around her neck and used to

drag her nude body through a wooded area where she was left; she had a deep red ring around her throat and bruises and abrasions over nearly her entire body; the victim testified that the defendant had tried to put her eyes out with his thumbs; and one witness testified that the victim's eyes were "red as tomatoes and swollen real bad." N.C.G.S. § 14-27.2(a)(2)b, N.C.G.S. § 14-27.4.

**2. Robbery § 4.2— common law robbery—felonious intent—evidence sufficient**

The trial court properly denied defendant's motions to dismiss the charge of common law robbery based on an alleged failure of the State to present substantial evidence of felonious intent where no direct evidence established the defendant's intent at the time of the taking, but the evidence tended to show that after the rape and sexual offenses the defendant threw the victim's clothing out of the car, kept her pocketbook containing fifty dollars, and disposed of the pocketbook the next day.

**3. Rape and Allied Offenses § 6— rape—serious injury—instructions**

The trial court did not err in its instructions on the element of serious injury in a prosecution for rape and sexual offenses where the court instructed the jury on mental injury even though there was no evidence of mental injury in the present case because the trial court corrected its instructions on the element of serious injury when the lack of any evidence tending to show mental injury was drawn to the court's attention. The curative instruction prevented any confusion and the trial court left the jury with an accurate instruction as to serious personal injury.

**4. Criminal Law § 122.1— additional instructions after jury retired—no error**

In a prosecution for sexual offenses, rape, kidnapping, and common law robbery in which the jury requested additional instructions after it had begun deliberations, the trial court did not abuse its discretion by not giving defendant's special instructions verbatim where the court instructed the jury in substantial conformity with defense counsel's request.

**5. Rape and Allied Offenses § 6.1— rape—request for instruction on assault on female as lesser included offense—denied—no error**

The trial court did not err by denying defendant's request for an instruction on the offense of assault on a female as a lesser included offense of rape because assault on a female contains elements not present in the greater offense of rape and therefore is not a lesser included offense.

**6. Rape and Allied Offenses § 4.3— rape—limited cross-examination of victim— no error**

The trial court did not err in a prosecution for sexual offenses, rape, kidnapping, and common law robbery by not admitting testimony from the victim regarding an incident in which she was allegedly "making out" with a defense witness. The evidence in question did not fall within any of the exceptions of the Rape Shield Statute. N.C.G.S. § 8C-1, Rule 412 (1986).

**7. Criminal Law § 102— statements by prosecutor—no prejudice**

There was no prejudice in a prosecution for rape, kidnapping, sexual offenses, and common law robbery from statements made by the prosecutor

where no objections were made to some of the statements. Objections were made and sustained and curative instructions were given to others, and objections to some statements were properly overruled.

**8. Bills of Discovery § 6; Constitutional Law § 30— defendant's pretrial statement —defendant provided with tape recording three days before trial—mistrial and discovery sanctions denied—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for rape, sexual offense, kidnapping, and robbery by denying defendant's motions for discovery sanctions, for a continuance, or for a mistrial where defendant was provided with the substance of his statement by way of a copy of an officer's written report on 29 March 1987; defense counsel became aware of the existence of a tape recorded version of the statement on 14 July 1987, three days before the introduction of the written report at trial; defense counsel was given an opportunity to listen to the tape on that same date; and defendant neither had the tape recording analyzed nor scheduled a further date upon which to have it analyzed, and did not call an officer who was present throughout the interview to clarify any inaudible portions of the recording.

**9. Bills of Discovery § 6; Constitutional Law § 30— failure to disclose footprint comparison—refusal of discovery sanctions—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for rape, sexual offense, kidnapping, and common law robbery by refusing to sanction the State for failure to disclose the results of footprint comparisons where defendant did not object or request sanctions when the State offered the evidence.

**10. Criminal Law §§ 42.4, 43.1— introduction of photograph of defendant and gun —no error**

The trial court did not err in a prosecution for rape, sexual offense, kidnapping, and common law robbery by introducing an officer's testimony about a rifle found in defendant's car when he was arrested or another officer's testimony about her identification of a photograph of defendant. The mere fact that defendant possessed a firearm at the time of his arrest does not imply that he either used or intended to use the rifle for illegal purposes, and the fact that an officer was able to positively identify a photograph of defendant shortly after seeing him lends credence to her subsequent identification of him at trial. There was neither testimony nor markings on the photograph that would identify it as a mug shot.

**11. Criminal Law § 75.2— admissibility of confession—finding of no threats or promises—no error**

In a prosecution for rape, sexual offense, kidnapping, and common law robbery, the trial court's findings of fact and conclusion that defendant's inculpatory statement was voluntary was supported by competent evidence where an officer testified that defendant was read his rights and that he waived his right to remain silent and his right to counsel; defendant acknowledged his waiver by signing a waiver of rights form; and, although defendant presented contradictory testimony, the officer testified that on numerous occasions he and another officer told defendant that they could not negotiate plea bargains.

**12. Criminal Law § 91.6— newly-obtained evidence—denial of continuance—no error**

The trial court did not err in a prosecution for rape, sexual offense, kidnapping, and common law robbery by denying defendant's motion for a continuance where defense counsel learned of a tape recording of defendant's statement three days prior to its introduction at trial, was given a written report of the substance of his statement months before trial, was given access to the tape recording in ample time to prepare a probing cross-examination when the tape recorded version of defendant's statement was introduced during rebuttal, defendant cross-examined an officer regarding the contents of the tape recording, and defendant could have called another officer to clarify the contents of the tape recording if any doubts about its contents remained.

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two consecutive life sentences entered by *Cornelius, J.*, at the 13 July 1987 session of Superior Court, FORSYTH County. The defendant's motion to bypass the Court of Appeals on his appeals of convictions for common law robbery and two counts of second-degree sexual offense was allowed on 30 November 1987. Heard in the Supreme Court on 14 April 1988.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State.*

*Joslin Davis for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Curtis Ray Herring, was tried upon proper bills of indictment charging him with rape, first-degree kidnapping, three counts of sexual offense and common law robbery. A jury found the defendant guilty of first-degree rape, first-degree sexual offense, first-degree kidnapping, two counts of second-degree sexual offense and common law robbery. The trial court entered judgments sentencing the defendant to two consecutive life sentences for first-degree rape and first-degree sexual offense, forty years for two counts of second-degree sexual offense and three years for common law robbery. The trial court arrested judgment on the conviction for first-degree kidnapping.

The defendant has brought forward on appeal numerous assignments of error. Having reviewed his assignments, we hold that the defendant's trial was free of reversible error.

The State's evidence tended to show, *inter alia*, that at approximately 9:30 p.m. on 29 September 1986, the female victim was walking along Ogburn Avenue in Winston-Salem when the defendant stopped his car beside her and asked if she wanted a ride. She answered "no" and continued walking. The defendant again drove up beside her and stopped. He told her to "get in the car or he was going to kill [her]." She got in as told, and the defendant held her hair so she could not get out of the car. The defendant drove to a dead-end road beside a church and stopped. He made the victim undress and threw her onto the back seat. He then performed cunnilingus upon her and made her perform fellatio upon him. The defendant also forcibly penetrated the victim with his penis, both vaginally and anally. She began to scream and the defendant choked her into unconsciousness. She regained consciousness as she was being dragged through the woods with her jeans tied around her neck. When the defendant saw her regain consciousness, he began choking her again. She once again lost consciousness. When she regained consciousness, the defendant was gone. Clad only in shoes and jeans, the victim went to the nearest house and telephoned the police.

The victim was taken by ambulance to Forsyth County Hospital. The attending physician testified that the victim suffered from numerous bruises and scratches over her body. The bruises around her neck resembled the "ends of fingers." The doctor observed dried blood in the victim's vaginal and anal areas.

Corporal Joyce Sink of the Forsyth County Sheriff's Department responded to the victim's call. She drove down the dirt road where the incident had occurred and saw a car with three men coming in her direction. She stopped the car and asked the occupants for identification. All three men denied having any identification. The defendant, Herring, identified himself as Ricky Davis.

On 3 November 1986, the defendant was apprehended in Narrows, Virginia pursuant to a fugitive warrant and returned to North Carolina. Deputy Thurman Stewart of the Forsyth County Sheriff's Department spoke with the defendant on 10 November 1986 and read his *Miranda* rights to him. The defendant signed the waiver of rights form and said he wanted to talk.

The defendant gave Deputy Stewart a statement in which he admitted taking the victim to "the end of [a dirt] road and rap[ing] her." He stated that she began to scream rape, "but he did not stop because he thought he would be in just as much trouble if he finished what he started . . . as he would be if he stopped." He further stated that he had drunk liquor and "shot two loads of cocaine" that evening and that he did not remember performing oral or anal sex on the victim. He admitted dragging the victim out of the car and into the woods. He stated that he and his two brothers returned to the area to see if the girl was injured. Finally, the defendant stated that he found the victim's purse and panties in his car the next day and threw them away.

By his first assignment of error, the defendant contends that the trial court erred in denying his motions to dismiss the charges against him at the close of the State's evidence and at the close of all of the evidence. We conclude that the trial court properly denied the defendant's motions to dismiss.

The defendant assigns as error the trial court's denial of his motions to dismiss the charges against him for insufficiency of the evidence. A defendant's motion for dismissal for insufficiency of the evidence in a criminal case raises the question of whether substantial evidence of each essential element of the offenses charged has been presented. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980). In determining this issue, the evidence must be viewed in the light most favorable to the State, giving the State every reasonable inference which may be drawn therefrom. *State v. Jerrett*, 309 N.C. 239, 263, 307 S.E. 2d 339, 352 (1983). If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that the defendant committed it, a motion to dismiss should be denied. *E.g., State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649.

[1] The defendant first argues that the trial court erred in dismissing the charges of first-degree rape and first-degree sexual offense because the State failed to present substantial evidence of "serious personal injury" as that phrase is used in the definition of first-degree rape under N.C.G.S. § 14-27.2(a)(2)b and in the

definition of first-degree sexual offense under N.C.G.S. § 14-27.4. We do not agree.

In determining whether serious personal injury has been inflicted, the court must consider the particular facts of each case. *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1977). The element of infliction of serious personal injury is satisfied

> when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of rape or sexual offense, or injury inflicted upon the victim or another for the purpose of concealing the crimes or to aid in the assailant's escape.

*State v. Blackstock*, 314 N.C. 232, 242, 333 S.E. 2d 245, 252 (1985).

In the present case, the State's evidence tended to show that the defendant choked the victim into unconsciousness three times. Her jeans were tied around her neck and used to drag her nude body through a wooded area where she was left. She had a deep red ring around her throat and bruises and abrasions over nearly her entire body. The victim testified that the defendant had tried to "put her eyes out with his thumbs." One witness testified that the victim's eyes were "red as tomatoes and swollen real bad." We conclude that the evidence, taken in the light most favorable to the State, supports the serious injury element of first-degree rape and first-degree sexual offense. *See generally State v. Boone*, 307 N.C. 198, 297 S.E. 2d 585 (1982).

[2] The defendant next argues that the trial court erred in denying his motions to dismiss the charge of common law robbery because the State failed to present substantial evidence of "felonious intent." Common law robbery is defined as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E. 2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982). The felonious taking element of common law robbery requires "a taking with the felonious intent on the part of the taker to deprive the owner of his

property permanently and to convert it to the use of the taker." *State v. Lawrence*, 262 N.C. 162, 168, 136 S.E. 2d 595, 599-600 (1964).

In the present case, no direct evidence established the defendant's intent at the time of the taking to deprive the victim of her pocketbook. However, "[i]ntent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750, 208 S.E. 2d 506, 508 (1974). The evidence in the present case tended to show that after the rape and sexual offenses, the defendant threw the victim's clothing out of the car but kept her pocketbook containing fifty dollars. The next day the defendant disposed of the pocketbook. Taken in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, the evidence permitted, but did not compel, the reasonable inference that the defendant took the victim's pocketbook with the intent to permanently deprive her of her property and convert it to his own use. The trial court thus properly denied the defendant's motions.

[3] By his next assignment, the defendant contends that the trial court erred in instructing the jury on the element of serious injury, in denying his request for special jury instructions, and in refusing to reinstruct the jury using the defendant's special instructions. Prior to the charge conference, the defense counsel informed the trial court that she would request an instruction that "[a]ny injury is serious if the physical injury to the person may, but not necessarily must, result in death. The injury must be serious but fall short of causing death." The trial court agreed to give the requested instruction. The trial court also stated that there is "no evidence of any permanent or any mental injury . . . . On the basis of the law, there's no reason to submit an issue on that or charge the jury in that respect."

During its instructions on first-degree rape, the trial court instructed the jury, in pertinent part:

> In order for you to find serious personal injury because of the injury to the mind or nervous system, the State must satisfy you beyond a reasonable doubt that the injury extended for some appreciable time beyond the incident surrounding the crime itself.

Later, the defense counsel drew the court's attention to these instructions. At that point, the trial court reinstructed the jury on the element of serious personal injury as follows:

> First of all, when the Court was talking about serious personal injury, it told you that serious personal injury may be met by the showing of either mental injury as well as bodily injury. Now, in this case, there's no evidence of any mental injury involved in this case and so your sole consideration as to serious personal injury will be whether or not it meets the Court's standard as to serious bodily injury. And the Court has defined that the injury must be serious, but it must fall short of causing death. That will be the standard that you'll use in determining serious personal injury.

The defendant now argues that the trial court erred by erroneously instructing the jury on the element of serious injury and by failing to give the special instruction requested by the defendant. We conclude that the quoted portions of the instructions did not mislead the jury. *See State v. Bagley*, 321 N.C. 201, 362 S.E. 2d 244 (1987), *cert. denied*, --- U.S. ---, 99 L.Ed. 2d 912 (1988). The instructions, when read in their entirety, indicate that the trial court corrected its instructions on the element of serious injury when the lack of any evidence tending to show mental injury was drawn to the court's attention. The trial court then specifically instructed the jury that there was no evidence of mental injury in the present case and that the jury's sole consideration was whether there was serious *bodily* injury. After considering the entire charge, we conclude that the curative instruction prevented any confusion and that the trial court left the jury with an accurate instruction as to "serious personal injury." This assignment is overruled.

[4] Next, the defendant contends that the trial court erred in reinstructing the jury. After the jury had deliberated for some time, it sent a written request to the trial court asking that the court "provide a copy of each law the Judge read to us. This is so we won't forget any of the points that are needed to find the Defendant guilty or not guilty of the different degrees of first and second." Pursuant to the request, the trial court again instructed the jury on the elements of each offense. The defendant now contends that the trial court erred in denying the defendant's re-

quest that the additional instructions include the defendant's requested special instructions regarding consent and serious personal injury.

After the jury retires for deliberation, the trial court may repeat or clarify instructions in response to an inquiry of the jury made in open court. N.C.G.S. § 15A-1234(1) (1983). A trial court is not required to give a requested instruction in the exact language prayed for. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). If a requested instruction is correct in law and supported by the evidence, the court, "while not required to parrot the instructions 'or to become a mere judicial phonograph for recording the exact and identical words of counsel,' must charge the jury in substantial conformity to the prayer." *State v. Bailey*, 254 N.C. 380, 386, 119 S.E. 2d 165, 170 (1961) (quoting *State v. Henderson*, 206 N.C. 830, 175 S.E. 201 (1934)) *cited in State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976). Whether the trial court instructs using the exact language requested by counsel is a matter within its discretion and will not be overturned absent a showing of abuse of discretion. *Id.*; *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285.

In the present case, the record discloses that the trial court instructed the jury in substantial conformity with the defense counsel's request. The court's refusal to give the defendant's special instructions verbatim was not an abuse of discretion. The assignment is, therefore, overruled.

[5] In the defendant's next assignment of error, he contends that the trial court erred by denying his request for an instruction on the offense of assault on a female as a lesser included offense of rape. "A defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternate verdicts." *State v. Drumgold*, 297 N.C. 267, 271, 254 S.E. 2d 531, 533 (1979) (quoting *State v. Palmer*, 293 N.C. 633, 643-44, 293 S.E. 2d 406, 413 (1977)). In determining whether one offense is a lesser included offense of another, we apply a definitional as opposed to a transactional test. *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982). *See also State v. Bagley*, 321 N.C. 201, 362 S.E. 2d 244. "If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *State v. Weaver*, 306 N.C. at 635, 295

S.E. 2d at 379. With these principles in mind we consider the elements of the crimes of assault on a female and rape.

The elements of assault on a female are (1) an assault, (2) upon a female person, (3) by a male person (4) who is at least eighteen years old. N.C.G.S. § 14-33(b)(2) (1986). Neither the element that the defendant be a male person nor the element that he be at least eighteen years old are elements of the crime of rape. N.C.G.S. § 14-27.2(a)(2)b (1985). We, therefore, conclude that assault on a female is not a lesser included offense of rape, because assault on a female contains elements not present in the greater offense of rape. *See State v. Wortham*, 318 N.C. 669, 351 S.E. 2d 294 (1987) (assault on a female not lesser included offense of attempted second-degree rape). The defendant's assignment of error is overruled.

[6] By his next assignment of error the defendant contends that the trial court abused its discretion in limiting his cross-examination of the victim. The defendant attempted to elicit testimony from the victim regarding an incident in which she was allegedly "making out" with defense witness Robert Harding. The trial court found the evidence was inadmissible under the Rape Shield Statute. N.C.G.S. § 8C-1, Rule 412 (1986).

It is a well-established principle that an accused is assured the right to cross-examine adverse witnesses. *E.g., State v. Newman*, 308 N.C. 231, 254, 302 S.E. 2d 174, 187 (1983). The scope of cross-examination, however, is within the sound discretion of the trial court, and its rulings thereon will not be disturbed absent a showing of abuse of discretion. *State v. Hinson*, 310 N.C. 245, 254, 311 S.E. 2d 256, 263, *cert. denied*, 469 U.S. 839, 83 L.Ed. 2d 78 (1984). Having reviewed the defendant's contentions, we conclude that the trial court properly limited the cross-examination of the victim pursuant to the Rape Shield Statute.

The Rape Shield Statute provides that "the sexual behavior of the complainant is irrelevant to any issue in the prosecution" except in four very narrow situations. The evidence in question in the present case did not fall within any of those exceptions and was properly excluded. The defendant does not contend that his attempted cross-examination fell within one of the exceptions. Rather, his sole contention is that cross-examination of the victim regarding her prior sexual behavior was "probative of the defend-

ant's position that the prosecutrix . . . consented to the sexual acts" with him. Such evidence is explicitly deemed irrelevant for that purpose, unless it falls within one of the specific exceptions under the Rape Shield Statute. N.C.G.S. § 8C-1, Rule 412. This assignment of error is overruled.

[7] By another assignment of error the defendant brings forth numerous allegations of prosecutorial misconduct. The defendant contends that the prosecutor made statements calculated to mislead the jury and to prejudice him. The defendant's arguments fall within several general categories to which different standards of review apply. In addressing these arguments, we will treat the prosecutor's statements as falling into three general categories, *i.e.*, statements to which no objection was made, statements to which objections were sustained and curative instructions were given, and statements to which objections were overruled.

It is well settled that "prosecutorial statements are not placed in an isolated vacuum on appeal. Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred." *State v. Pinch*, 306 N.C. 1, 24, 292 S.E. 2d 203, 221-22 (1982). With this general principle in mind, we now consider the assignment in the present case.

The defendant has brought forth three arguments relating to statements made by the prosecutor during closing arguments to which no objection was made. When a defendant fails to object to statements made during closing arguments, "the standard we employ is whether the statements amounted to such gross impropriety as to require the trial judge to act *ex mero motu.*" *State v. Oliver*, 309 N.C. 326, 356, 307 S.E. 2d 304, 324 (1983). Having failed to object at trial, the defendant may now only assert that the trial court should have corrected the argument on its own motion. *See id.*; *State v. Craig*, 308 N.C. 446, 454, 302 S.E. 2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247 (1983). After reviewing the challenged statements in their context, we conclude that they were not extremely or grossly improper.

Next, we consider eight other allegedly improper statements made by the prosecutor during closing arguments. The defendant interposed timely objections to these statements, and the trial court sustained the objections and instructed the jury to disre-

gard the arguments. "Ordinarily, improper argument of counsel is held cured by the court's action promptly sustaining the objection to the argument and cautioning the jury not to consider it." *State v. Sparrow*, 276 N.C. 499, 514, 173 S.E. 2d 897, 907 (1970); *see also State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). In the present case, having reviewed the assignments of error and the arguments of counsel in their entirety, we conclude that the trial court's prompt action in instructing the jury to disregard the arguments removed any possibility of reversible error.

Finally, we consider the defendant's arguments relevant to the statements by the prosecutor and as to which the defendant's objections were overruled. In the first of those statements, the prosecutor commented on the purpose of the Rape Shield Statute. In her second statement, she commented that the defendant belonged in prison for a long time.

We have consistently held that counsel must be allowed wide latitude in jury arguments. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629. Counsel "may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case." *Id.* at 328, 226 S.E. 2d at 640. "Whether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge, . . . unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury." *Id.*; *State v. Wortham*, 287 N.C. 541, 215 S.E. 2d 131 (1975). It is the duty of the trial court, upon timely objection, to censor remarks not warranted by the evidence or the law. *Id.*

In the present case, the trial court did not abuse its discretion in overruling the defendant's objection to the comment about the purpose of the Rape Shield Statute. During the trial the State invoked the protections afforded by the Rape Shield Statute, N.C.G.S. § 8C-1, Rule 412, and in her closing argument, the prosecutor attempted to explain that the statute was intended to insure that victims were not again "victimized" through inquiries about irrelevant sexual behavior. We conclude that the prosecutor's attempted explanation of the Rape Shield Statute was within the permissible bounds of closing arguments, and the trial court's ruling was proper. Further, we note that even though the trial court overruled the defendant's objection, it immediately

cautioned the jury: "Again, you'll follow the Court's instructions as to the law in this case." We conclude that the trial court's admonition to the jury erased any possibility of prejudice.

We further conclude that no prejudice resulted when the trial court overruled the defendant's objection to the prosecutor's statement that the defendant "belongs in prison . . . for a long time . . . you shouldn't be concerned about the punishment when you are back there deciding what the facts are. You know that's up to the court." The cautionary remarks of the trial court which immediately followed negated any possible prejudice. Taken as a whole, we conclude the statement properly directed the jury's attention to the fact that sentencing was the concern of the trial court. For the foregoing reasons, the defendant's assignments of error relevant to statements made by the prosecutor are overruled.

[8] By his next assignment of error, the defendant contends that the trial court erred in introducing his pretrial statement since he was not provided with the tape recorded version of the statement. The defendant also contends that sanctions should have been imposed upon the State for failure to provide him with the results of footprint comparisons. We will address the defendant's arguments separately.

On 10 November 1986, the defendant gave an inculpatory statement to Officers Stewart and Tuttle of the Forsyth County Sheriff's Department. Stewart took notes during the interview and tape recorded the defendant's statement. On 22 November 1986, Stewart, using the notes and tape recording to refresh his memory, typed a report of the defendant's statement. A copy of the report was given to the defendant on 26 March 1987 pursuant to his discovery motion. Prior to trial, the defendant filed a motion to suppress his pretrial statement.

The trial court held a lengthy *voir dire* hearing to determine whether the defendant's statement had been induced by means of improper promises, threats or violence. During the hearing, defense counsel became aware that the defendant's statement had been tape recorded. Officer Stewart testified that he listened to the tape recording, read his notes and then wrote his report. He testified that much of the report was a paraphrased version of the defendant's remarks and that direct quotations were indicated

by the use of quotation marks. Stewart further testified that parts of the recorded statement were clear, but other parts were difficult to understand.

Following the *voir dire* hearing in which the trial court ruled that the statement was admissible, the defense counsel was allowed to listen to the tape recording. The following day, the defendant filed a motion for sanctions to prohibit the State from introducing any evidence of the statement made by the defendant or to declare a mistrial to give the defendant an opportunity to have the tape recording analyzed. The trial court denied the motions.

At trial, the defense counsel requested a continuance "in order to meet . . . the recording that was revealed to [her] earlier in the week." The trial court denied the request, stating that a lengthy *voir dire* hearing had been held three days earlier regarding the statement and that the court had delayed the trial on three different occasions at the defense counsel's request. The defendant now contends that the trial court erred in denying his motion for sanctions, his motion for a mistrial and his motion for a continuance, because he did not have an opportunity to rebut the "newly discovered" evidence.

N.C.G.S. § 15A-903, which controls disclosure of evidence by the State, provides in pertinent part:

(a) Statement of Defendant—Upon motion of a defendant, the court must order the prosecutor:

(1) To permit the defendant to inspect and copy or photograph any relevant written or recorded statements made by the defendant, or copies thereof . . . .

N.C.G.S. § 15A-903(a) (1983). Sanctions against the State for failure to provide such information where required are governed by N.C.G.S. § 15A-910, which allows the trial court to (1) order the party to permit discovery or inspection, or (2) grant a continuance or recess, or (3) prohibit the party from introducing evidence not disclosed, or (4) declare a mistrial, or (5) dismiss the charge, with or without prejudice, or (6) enter other appropriate orders. N.C.G.S. § 15A-910 (1983). The sanction for failure to make

discovery when required is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *State v. King*, 311 N.C. 603, 320 S.E. 2d 1 (1984); *State v. Dukes*, 305 N.C. 387, 289 S.E. 2d 561 (1982).

On 29 March 1987, the defendant was furnished the substance of the defendant's statement by way of a copy of the officer's written report. The defense counsel became aware of the existence of the tape recording on 14 July 1987, three days before the introduction of the written report. On the same date, defense counsel was given an opportunity to listen to the tape. Although the defense counsel knew of the existence of the tape several days before the introduction of the written report, she neither had the tape recording analyzed nor scheduled a future date upon which to have it analyzed. Neither did the defense counsel call Officer Tuttle, who was present throughout the interview, in an attempt to clarify any inaudible portions of the recording. In light of these failures — perhaps for understandable tactical reasons — to clarify any parts of the defendant's statement which were difficult to understand on the tape recording, we fail to see how the defendant was prejudiced by the introduction of a written statement which was in his possession months before trial. We conclude that the trial court acted within its discretion in refusing to impose sanctions against the State by excluding the statement or declaring a mistrial. This assignment of error is overruled.

[9] The defendant next contends that the trial court should have sanctioned the State for failure to disclose the results of footprint comparisons. When the State offered footprint comparison evidence, the defendant did not object or request sanctions against the State. The defendant may not now complain that the trial court abused its discretion in failing to sanction the State for this alleged discovery violation. Having failed to draw the trial court's attention to the alleged discovery violation, the defendant denied the court an opportunity to consider the matter and take appropriate steps. This assignment of error is overruled.

[10] By his next assignment of error, the defendant contends that the trial court erred in allowing the testimony of two law enforcement officers. Over the defendant's objections, the court allowed Officer D. W. Allen to testify that the defendant had a .22 caliber rifle in his car when he was arrested. The defendant con-

tends that this evidence was inadmissible under N.C.G.S. § 8C-1, Rules 401 and 402. He next contends that the trial court abused its discretion in allowing Deputy Sink to testify that during the course of her investigation she identified a photograph of the defendant. The defendant argues that Deputy Sink's testimony was prejudicial because it implied that the photograph was a mug shot of the defendant. The defendant argues that this implication was tantamount to evidence that the defendant had a prior criminal record.

A trial court's ruling on an evidentiary point will be presumed to be correct unless the complaining party can demonstrate that the particular ruling was in fact incorrect. *State v. Milby*, 302 N.C. 137, 273 S.E. 2d 716 (1981). Even if the complaining party can show that the trial court erred in its ruling, relief ordinarily will not be granted absent a showing of prejudice. N.C.G.S. § 15A-1443(a) (1983).

In the present case even if it is assumed *arguendo* that the introduction of Officer Allen's testimony about the rifle was erroneous, we conclude that the defendant has not shown that he was prejudiced. The mere fact that the defendant possessed a firearm at the time of his arrest does not imply that he either used or intended to use the rifle for illegal purposes. There was no intimation by Officer Allen that the defendant attempted to use the rifle when he was arrested, that it was used in the commission of any crime or that possession of the rifle was otherwise unlawful. Considering the facts of this particular case, we conclude that the admission of Officer Allen's testimony relating to the defendant's rifle, if error, was not prejudicial. This assignment of error is overruled.

Next, we consider the defendant's arguments relating to Deputy Sink's testimony. Deputy Sink's testimony that she identified a photograph of the defendant prior to trial was properly admitted to corroborate her identification of the defendant as the man she saw on the night in question. On the evening of the crime, Sink stopped the defendant and his two brothers as they were leaving the crime scene. The defendant produced no identification and gave Sink a false name. Later that evening, Sink identified a photograph of the defendant as the man she saw leaving the scene of the crime. The fact that she was able to positively iden-

tify a photograph of the defendant shortly after seeing him lends credence to her subsequent identification of him at trial.

Furthermore, a careful review of the record reveals no evidence that would have led the jury to believe that the photograph was a mug shot. There was neither testimony in this regard nor markings on the photograph that would identify it as a mug shot. We fail to see how the jury could infer that the defendant had a prison record from Sink's testimony that she identified a photograph of the defendant prior to the trial. For the foregoing reasons, this assignment of error is overruled.

[11] By his next assignment of error, the defendant contends that the trial court erred in denying his motion to suppress his inculpatory statement. Specifically, the defendant contends that the evidence presented during a *voir dire* hearing did not support the trial court's findings of fact that "officers made no promises, offers, awards [or] inducements to make any statement."

After his extradition to North Carolina, the defendant was held at the Forsyth County Jail and charged with first-degree rape and first-degree kidnapping. On 10 November 1986, the defendant was appointed trial counsel during his first appearance. The uncontroverted evidence tended to show that on his way back to the holding cell after his first appearance, the defendant told Officer Stewart that he wanted "to talk with him; that [the defendant] had some information that [he] would give [Stewart] in exchange if [Stewart] would help [him] get a plea bargain." The testimony of Officer Stewart and the defendant sharply conflicts on the balance of the conversation. The defendant testified that Officer Stewart agreed to help negotiate a plea bargain. Officer Stewart testified that he did not.

During the interview, the defendant gave the officers information about a number of unrelated crimes in which he was not implicated. The conversation ended when the defendant said he was hungry and that he wanted to go back to the jail and eat dinner. Sometime later, Officers Stewart and Tuttle returned to the jail and took the defendant back to the interview room. Officer Stewart advised the defendant of his constitutional rights. The defendant agreed to waive his *Miranda* rights and signed a waiver form. Stewart further testified that he asked the defendant "if he wanted to talk to a lawyer and have him present during

questioning." The defendant responded, "no" and wrote "no" by that question on the waiver form. Stewart also asked the defendant if "he wished to answer questions," to which he replied "yes" and wrote "yes" beside that question. Stewart testified that during the interrogation the defendant appeared coherent and was able to understand the questions.

During the interview, the defendant recounted the events of 29 September 1986. Officer Stewart testified that the defendant mentioned that he wanted to negotiate a plea bargain, and at that time he was advised by Stewart and Detective Tuttle that they "could not make any promises or negotiate plea bargains, that that was between he or his attorney and the District Attorney's office." Stewart stated that the defendant was told several times prior to his statement that investigators could not make promises or plea bargains and that plea bargains were made through the District Attorney's office. Stewart agreed to "relay [the defendant's] message to the District Attorney." Stewart again cautioned the defendant that only the district attorney could negotiate plea bargains. After the defendant made his statement, he again mentioned a plea bargain and was again told that investigators could not negotiate plea bargains. During the two hour interview, the defendant never expressed a desire to stop talking or a desire to have an attorney present.

Findings of fact concerning the admissibility of a confession are conclusive and binding if supported by competent evidence. *State v. Simpson*, 314 N.C. 359, 368, 334 S.E. 2d 53, 59 (1985). This is true even if the evidence is conflicting. *State v. Nations*, 319 N.C. 318, 325, 354 S.E. 2d 510, 514 (1987); *State v. Williams*, 319 N.C. 73, 352 S.E. 2d 428 (1987).

In the present case, the trial court's finding that the officers did not induce the defendant's statement by means of threats or promises is supported by competent evidence. Officer Stewart testified that the defendant was read his rights and that he waived his right to remain silent and his right to counsel. The defendant acknowledged his waiver by signing a waiver of rights form. Further, Officer Stewart testified that on numerous occasions he and Officer Tuttle told the defendant that they could not negotiate plea bargains. Although this testimony conflicts with the defendant's testimony, we conclude that Stewart's testimony

was competent evidence sufficient to support the trial court's findings of fact and its conclusion that based on the totality of the circumstances, the defendant's statement was voluntary. *See State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984). This assignment of error is overruled.

[12]  By his last assignment of error, the defendant contends that the trial court abused its discretion in allowing the State to introduce the tape recorded version of the defendant's statement during rebuttal. The defendant again argues that the trial court's refusal to grant his motion for a continuance effectively denied him an opportunity to rebut this "new" evidence. We disagree.

As we have previously discussed at length, the defendant knew about the tape recording three days prior to its introduction at trial, and he was given a written report of the substance of his statement months before trial. On such facts, we do not classify the tape recording as "new" evidence.

As we have previously stated, the defendant was given access to the tape recording in ample time to prepare a probing cross-examination of Officer Stewart. At trial, the defendant cross-examined Officer Stewart regarding the contents of the tape recording. Further, the defendant could have called Officer Tuttle to clarify the contents of the tape recording if any doubts about its contents remained. The trial court did not effectively deny the defendant an opportunity to rebut the evidence. This assignment is overruled.

Having carefully reviewed the record and each of the defendant's assignments of error, we hold that defendant received a fair trial, free of prejudicial error.

No error.