ELMORE, Judge.
 

 Ronald Irvin Bethea (defendant) appeals from judgment entered upon a jury verdict finding defendant guilty of possession with intent to sell and deliver cocaine, sale of cocaine, and delivery of cocaine. Defendant was sentenced to consecutive terms of imprisonment for 16 to 20 months on the possession with intent to sell and deliver cocaine conviction and 23 to 28 months on the consolidated sale of cocaine and delivery of cocaine convictions. For the reasons discussed herein, we conclude that defendant received a fair trial, free of prejudicial error.
 

 The State's evidence tended to show that from April 2001 until October 2001, the New Hanover County Sheriff's Department and theWilmington Police Department conducted a joint undercover drug purchase operation targeting street-level drug dealers in Wilmington, North Carolina and New Hanover County. In this undercover operation, dubbed "Operation Paint Man," New Hanover County Sheriff's Department detective Michael Marlow (Detective Marlow) disguised himself as a house painter and drove a painter's station wagon into predetermined areas of Wilmington and New Hanover County where drugs were known to be sold, where he would make contact with street-corner drug dealers and purchase crack cocaine or marijuana from them. Before each operation, Detective Marlow would meet with the case detective and backup law enforcement officers to prepare and test the undercover vehicle's video and audio recording systems and to receive his target area assignment. Detective Marlow would then proceed to the target area, where he testified a typical transaction would last two or three minutes and would unfold as follows:
 

 Normally, I would get flagged down, or something would be said, or a wave would be made toward me by the dealer. I would pull to the curb . . . an individual would ask what I want, and I would give an amount, whether it be . . . a 10, 20, or $50 amount of crack cocaine, and then, normally, the transaction would happen quickly after that. The person would either get in the vehicle or stand just outside the vehicle, do the transaction through the window, and I would leave to meet the cover team and case detective.
 

 . . . .
 

 Immediately after making a buy, Detective Marlow would meet with the case detective and backup officers to "tag and bag" as evidence the drugs he had purchased and to review the tapes of eachtransaction, as recorded by the undercover vehicle's video and audio recording systems. Within 24 hours of each purchase, law enforcement officers who were familiar with the area in which the purchase had been made would review the videotape to see if they could identify the dealer.
 
 [1]
 
 Suspects who were identified from these videotapes were not immediately arrested, for fear of compromising the undercover operation. Detective Marlow testified that he made approximately 200 buys during the operation's six-month duration, from "just over 100 individuals." Approximately 100 individuals, including defendant, were able to be identified from the videotaped transactions and were arrested at the end of "Operation Paint Man" in October 2001.
 
 [2]
 

 On 14 August 2001, Detective Marlow was driving, in his undercover guise, near the intersection of 11th and Orange Streets in Wilmington when a man began running parallel with the station wagon, waving at Detective Marlow and trying to get him to stop. After Detective Marlow stopped the vehicle and activated its hidden video and audio recording devices, the man, later identified as defendant Ronald Irvin Bethea, approached the driver's side, identified himself as "Ronnie" and asked if Detective Marlow"remembered him from the area." After Detective Marlow indicated he wished to purchase a twenty-dollar quantity of crack cocaine, the man gave Detective Marlow a small amount of what was later determined to be cocaine base, Schedule II. Detective Marlow gave the man $20.00, and the man walked away.
 
 [3]
 

 In keeping with "Operation Paint Man" procedure, Detective Marlow immediately proceeded to a prearranged location, where he met with the case detective, Wilmington Police Department detective Edward Godwin (Detective Godwin), and other law enforcement officers. After checking the videotape to be sure the transaction had been recorded, Detective Marlow turned over the video, along with the crack cocaine he had purchased, to Detective Godwin. Either that evening or the next day, Detective Godwin viewed the videotaped transaction and listened to the corresponding audio, and quickly identified the dealer as defendant. Detective Godwin testified that during his fourteen years as a Wilmington police officer he had previously seen defendant "30 to 40 times . . . [i]n what has been considered open air drug market areas[,]" including the area in which the 14 August 2001 transaction with Detective Marlow took place. Detective Godwin testified that he was "[p]ositive . . . . One hundred percent . . . . No doubt at all" that defendant was the man depicted on the videotape.
 

 Thereafter, defendant was arrested on 8 October 2001 and indicted on 26 November 2001 on one count each of possession withintent to sell and deliver cocaine, sale of cocaine, and delivery of cocaine. Defendant elected not to present any evidence at trial, and after the trial court denied defendant's motions to dismiss the charges for insufficiency of the evidence, the jury returned a verdict of guilty on all counts. From the judgment subsequently entered upon that verdict, defendant appeals.
 

 By his first assignment of error, defendant contends the trial court abused its discretion by not allowing him to cross-examine Detective Marlow regarding the race of the individuals "targeted" by the undercover operation. Defendant's attempted cross-examination of Detective Marlow on this point elicited the following testimony:
 

 Q Detective Marlow, this sting operation came to be known as the "paint man operation," didn't it?
 

 A Yes.
 

 Q How many of the individuals targeted were black males?
 

 [Assistant District Attorney] MS. EVERHART: Objection.
 

 THE COURT: Sustained.
 

 . . . .
 

 Defendant argues in his brief that he should have been allowed to pursue this line of questioning with Detective Marlow on cross-examination because if "the detectives involved in the ' sting' had targeted nothing but black males . . . the jury could well have come to the conclusion that Detective Godwin had an improper motive in his identification of [defendant], a black male, as the drugseller." After carefully reviewing defendant's contentions and the record before us, we conclude that the trial court properly limited the cross-examination of Detective Marlow.
 

 "It is a well-established principle that an accused is assured the right to cross-examine adverse witnesses. The scope of cross-examination, however, is within the sound discretion of the trial court, and its rulings thereon will not be disturbed absent a showing of abuse of discretion."
 
 State v. Herring,
 

 322 N.C. 733
 
 , 743,
 
 370 S.E.2d 363
 
 , 370 (1988) (citations omitted). Rule 611(b) of the North Carolina Rules of Evidence provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2003);
 
 see also State v. Hosey,
 

 79 N.C. App. 196
 
 , 202-03,
 
 339 S.E.2d 414
 
 , 417,
 
 modified,
 

 318 N.C. 330
 
 ,
 
 348 S.E.2d 805
 
 (1986) ("The scope of the cross-examination is limited to only those matters that are relevant to issues before the jury.")
 

 In the present case, the record evidence shows that the undercover operations targeted local
 
 areas
 
 in which drug sales were known by experienced law enforcement officers to regularly occur, rather than
 
 individuals.
 
 Detective Marlow testified that a typical operation consisted of him driving the undercover vehicle to such an area and waiting to be "flagged down" by an individual, from whom he would then purchase drugs. According to Detective Marlow's testimony, this is precisely the manner in which the transaction involving defendant unfolded. Moreover, the record establishes that Detective Godwin and Wilmington Police Department detectiveJames Gore, as the lead detectives in "Operation Paint Man," selected the
 
 areas
 
 targeted by the undercover operation based on their knowledge of the local drug market, obtained through several years of working in the Department's narcotics investigation and enforcement units. Detective Marlow, by contrast, did not play any role in selecting the areas targeted by the undercover operation. On these facts, we conclude that defendant's question was not relevant to any issue before the jury or to Detective Marlow's credibility. Because we cannot say that the trial court abused its discretion in limiting defendant's cross-examination of Detective Marlow in this manner, this assignment of error is overruled.
 

 We next consider defendant's second and fourth assignments of error, which are related. By his second and fourth assignments of error, defendant asserts that the trial court erred in allowing Detective Godwin to testify (1) that the individual appearing in the drug-deal videotape with Detective Marlow was defendant, and (2) that his identification of defendant from the videotape was based on his several previous observations of defendant in areas where drug sales were known to regularly occur. The relevant portion of Detective Godwin's testimony is as follows:
 

 Q After watching and listening to that video, were you able to form an opinion, satisfactory to yourself, as to who it was that was in the video?
 

 A Yes, ma'am.
 

 [Defendant's trial counsel] MR. SULLIVAN: Objection.
 

 THE COURT: Noted. Overruled.
 

 A Yes, ma'am.
 

 Q Okay. And did you make an identification at that time?
 

 A I did.
 

 Q Who did you identify as the person in that video?
 

 MR. SULLIVAN: Objection.
 

 THE COURT: Noted. Overruled.
 

 A Ronald Bethea.
 

 . . . .
 

 Q Could you tell the jury approximately how many different occasions you would say, before this incident, you had had an opportunity to observe Mr. Bethea?
 

 A I would say, conservatively, 30 to 40 times.
 

 . . . .
 

 Q You said at least 30 to 40 previous time? [sic]
 

 A That's conservative, yes, in a 14-year period.
 

 Q Okay. And what areas of the city had you had an opportunity to observe Mr. Bethea?
 

 MR. SULLIVAN: Objection.
 

 THE COURT: Noted. Overruled.
 

 [DETECTIVE GODWIN]: In what has been considered open air drug markets.
 

 Q Any particular areas that you can name?
 

 A I can remember at least four, being the Sixth and Swann Street area, 11th and Orange area, 10th and Castle, and the Sixth and Queen area.
 

 Q And the 11th and Orange area, is that the area of this particular -
 

 A Yes, ma'am.
 

 Q - incident? Okay. So you're saying you had seen Mr. Bethea in that area before?
 

 A Yes, ma'am.
 

 MR. SULLIVAN: Objection.
 

 THE COURT: Noted. Overruled.
 

 . . . .
 

 In support of his fourth assignment of error, defendant contends that whether or not defendant was the individual depicted in the videotape with Detective Marlow was "strictly a jury question and that it was improper for Detective Godwin to offer his opinion in that regard." We disagree.
 

 Under our Rules of Evidence, a witness may testify as to any relevant matter about which the witness has personal knowledge. N.C. Gen. Stat. § 8C-1, Rule 602 (2003);
 
 see also State v. Anthony,
 

 354 N.C. 372
 
 , 411,
 
 555 S.E.2d 557
 
 , 583 (2001),
 
 cert. denied,
 

 536 U.S. 930
 
 ,
 
 153 L. Ed. 2d 791
 
 (2002). "Furthermore, a lay witness may testify as to his or her opinion, provided that the opinion is rationally based upon his or her perception and is helpful to the jury's understanding of the testimony."
 
 Anthony,
 
 at 411,
 
 555 S.E.2d at
 
 583 (citing N.C. Gen. Stat. § 8C-1, Rule 701 (2003). In the present case, the identity of the seller in the videotape is clearly a relevant matter. Detective Godwin testified, without objection, that he had previously seen defendant approximately 30-40 times over the past 14 years, with a variety of different hairstyles and with and without facial hair. The record establishes that Detective Godwin's identification of defendant asthe seller was both based on his personal knowledge of defendant and also helpful to the jury's understanding of the testimony. Accordingly, defendant's fourth assignment of error is without merit.
 

 Returning to defendant's second assignment of error, defendant contends the trial court erred by allowing Detective Godwin to testify that his identification of defendant from the videotape was based on his several previous observations of defendant in areas where drug sales were known to regularly occur. Defendant asserts in his brief that admission of this testimony was erroneous because it "create[d] the certain impression that [defendant] was a long-standing drug dealer" by "characterizing [defendant] as someone who had attracted police attention at least 30-40 times over 14 years in open-air drug areas."
 

 We note initially that because defendant failed to object at trial to Detective Godwin's testimony that he had observed defendant 30-40 times over a 14-year period, defendant has failed to properly preserve for appellate review the admission of this portion of Detective Godwin's testimony. N.C.R. App. P. 10(b)(1);
 
 see also State v. Haselden,
 

 357 N.C. 1
 
 , 10,
 
 577 S.E.2d 594
 
 , 600,
 
 cert. denied,
 

 157 L. Ed. 2d 382
 
 ,
 
 124 S. Ct. 475
 
 (2003). Because the only objection interposed during this line of questioning came in response to the State's question asking
 
 where
 
 Detective Godwin had previously seen defendant, the sole question properly presented to this Court by defendant's second assignment of error is whether the trial court erred by allowing Detective Godwin's testimony thathe had previously observed defendant in areas where drugs are regularly sold, including the area where the transaction at issue took place. Defendant argues that this testimony constituted evidence of his "bad character" and that because defendant elected not to testify or otherwise put his character at issue, this testimony was improperly admitted. We disagree.
 

 Under our Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). However, Detective Godwin did not testify that he had observed defendant engaging in any illegal activity or that he had arrested defendant on any of the "30 to 40 times" he had seen defendant over the past 14 years. He merely testified that he had previously observed defendant in areas where drugs were regularly sold, including the area where the transaction which resulted in defendant's arrest occurred. On these facts, as in
 
 State v. Fielder,
 

 88 N.C. App. 463
 
 , 467,
 
 363 S.E.2d 662
 
 , 664 (1988), "we agree with the trial court's decision that the probative value of the contested testimony, which was necessary to establish defendant's positive identification, was not substantially outweighed by the danger of unfair prejudice, i.e. that the jury could possibly infer that defendant could have been involved in a similar crime" other than the one for which defendant was charged. We note that this Court in
 
 Fielder
 
 was "not convinced that the challenged testimony [of a police officer that she observed the defendant on the premises while the officer waspurchasing drugs from someone else, in a transaction separate from the transaction for which the defendant was charged] has been properly categorized by the defendant as a 'crime, wrong, or act' as contemplated by [Rule 404(b)]."
 
 Id.
 
 at 466, 662 S.E.2d at 663. In the present case, Detective Godwin did not testify that any of his observations of defendant occurred while defendant, or anyone in proximity to defendant, was engaged in illegal conduct. This assignment of error is overruled.
 

 By his third assignment of error, defendant contends the trial court erred by "allowing Detective Godwin to testify regarding his identification of the voice heard on the audiotape." Defendant correctly notes that the trial court orally granted his motion
 
 in limine
 
 to exclude "[a]ny testimony by Det. Godwin as to what the person in the video may have said[.]" However, at trial, over defendant's objection, Detective Godwin was allowed to testify that while watching the videotape and listening to the audio recording of the drug transaction, he "heard the person in the window of Detective Marlow's car say, 'It's me, Ronnie, you remember me, . . . . You know me. I got A-1, it's all right[.]'"
 

 While the challenged testimony was clearly precluded by the trial court's grant of defendant's motion
 
 in limine,
 
 defendant has failed to cite any authority for the proposition that its admission is
 
 per se
 
 reversible error. To the contrary, this Court has previously stated that a trial court's ruling on a motion
 
 in limine
 
 "is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature" andtherefore subject to modification during the course of a trial.
 
 Heatherly v. Industrial Health Council,
 

 130 N.C. App. 616
 
 , 619,
 
 504 S.E.2d 102
 
 , 105 (1998). Moreover, defendant has failed to show that he was prejudiced by admission of this testimony. At this point in the trial, Detective Marlow had already testified that the individual from whom he purchased drugs "told me his name was Ronnie" after approaching the undercover vehicle. The videotape and accompanying audio recording of the transaction was admitted into evidence and played for the jury. Finally, the record indicates that Detective Godwin relied on his previous visual observations in identifying the individual in the video as defendant, rather than the sound of the individual's voice or anything he said. This assignment of error is overruled.
 

 After a careful review of defendant's remaining assignments of error, we find them each to be without merit.
 

 No prejudicial error.
 

 Judges MCCULLOUGH and BRYANT concur.
 

 Report per Rule 30(e).
 

 Detective Marlow joined the New Hanover County Sheriff's Department in March 2001, one month before "Operation Paint Man" commenced, coming from a law enforcement position in Georgia. He testified that he did not know the individuals from whom he purchased drugs and that "[n]ormally, [he] wouldn't be involved in" the subsequent identification of these individuals from the video recorded during the transactions.
 

 Detective Marlow testified that "probably about 20" individuals from whom he purchased drugs were unable to be identified from the videotapes.
 

 The videotaped recording of this transaction was entered into evidence and played for the jury at trial. The video was replayed for the jurors, at their request, during deliberations.